### HUBBIRD et al. v. GOIN.

(Circuit Court of Appeals, Eighth Circuit, March 24, 1905. On Rehearing, June 28, 1905.)

#### No. 2,104.

1. FEDERAL COURTS—STATE DECISIONS AFFECTING REAL PROPERTY.

Decisions of the highest courts of a state affecting the title to real property will be followed by the federal courts, when like questions come under consideration in the latter jurisdiction.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 958.

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

**2. DEED—CONSTRUCTION—THE RULE IN SHELLEY'S CASE.**

A deed from a father, in consideration of love and affection and $1,000, granting to his daughter and children certain lands, with the provision in the nature of a habendum clause that "it is expressly agreed by the grantee in accepting this deed that she will not sell, convey or incumber or in any manner dispose of the same, but to retain the same for the use of herself and her children forever," does not come within the rule in Shelley's Case, in the absence of any statute of the state of Iowa abolishing such rule, under any controlling decision of the Supreme Court of that state as applied to the language of the deed in question. While the proviso, in so far as it undertakes to place a restraint upon the power of alienation by the mother, is under the statute of the state void, so as to leave her free to dispose of her interest in said land, it may nevertheless indicate the nature of the estate intended by the grantor to be conveyed to the daughter and her children. There is a wide distinction between a grant to A. and her children and a grant to A. and her heirs or the heirs of her body, as it is affected by the rule in Shelley's Case.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Deeds, §§ 413–415, 479.]

**3. SAME—RULE OF CONSTRUCTION.**

The intent of the grantor is the guiding star in the interpretation of deeds. Such intent is not to be concluded by any one clause or provision separately considered, but it is to be ascertained by taking and reading the instrument by its four corners, so as to make all its parts harmonious, rather than inconsistent or repugnant.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Deeds, §§ 231, 236.]

**4. SAME—GRANT TO A. AND CHILDREN.**

A naked deed to A. and her children, without more, where two children at the time of the grant are in esse, at common law might vest the fee in A. and the then living children as tenants in common. But where the habendum clause clearly indicates that it was the mind of the grantor to provide for the mother an estate to be enjoyed by her during life and for the benefit of her children in perpetuity, it negatives the idea of a limitation of the estate to the mother and the then living children as tenants in common. Nothing appearing on the face of the instrument to indicate why the two living grandchildren of tender years should be more the objects of the grantor's affection and solicitude than those afterwards born, on the birth of the afterborn children the estate in remainder would open to let in the latter as vested remaindermen, and upon the death of the mother the then living children would become entitled to the possession of the land.

**5. STATUTE OF LIMITATIONS.**

The statute of limitations at common law, as to the right of possession, would not begin to run against the remaindermen until the expiration of the particular estate. But inasmuch as under the statute of the state the two children living at the time of the grant, although minors, had the right to bring action to have their interests determined, the statute of limitation in this case had run against a possessory action by them, but had not run as to the after-born children.

Riner, District Judge, dissenting.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Southern District of Iowa.

The petition in this case alleges that Flossie E. Hubbird, Ethel Hubbird, Mary Hubbird, and Ora Hubbird are citizens of the state of Illinois and non-residents of the state of Iowa; that they are minors under the age of 18 years of age; that by an order of the county court of Macon county, Ill., said Elsie Bennett was duly appointed guardian of the estate of said Flossie, Ethel, Mary, and Ora Hubbird, minors, and that said Elsie Bennett was thereafter

duly appointed as such guardian by the district court for Decatur county, Iowa; that said Lottie Helen Manly is a citizen of the state of Illinois, and nonresident of the state of Iowa; and the defendant Goin is a citizen of the state of Iowa, and a resident of the Southern District in the Southern Division of Iowa; and that the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $2,000.

The petition then alleges that on the 19th day of March, 1881, William West and Elizabeth West, husband and wife, of Decatur county, in the state of Iowa, in consideration of love and affection and $1,000, executed and delivered to Elmira Hubbird and children, of Decatur county, state of Iowa, a deed of conveyance, which deed is attached to the petition, and referred to as a part thereof, and is in words and figures as follows:

"Know All Men By These Presents: That we, William West and Elizabeth West, husband and wife, of the county of Decatur and State of Iowa, for the consideration of love and affection and one thousand dollars, hereby convey to Elmira Hubbird & Children, of the County of Decatur and State of Iowa, the following described real estate, situated in the County of Decatur and State of Iowa, to-wit: The west half of the South West quarter of Section Eighteen (18) Township No. Seventy (70), North of Range Twenty-six (26) West containing according to the original survey, containing eighty acres more or less.

"It is expressly agreed by the grantee in accepting this deed, that she shall not sell, convey or incumber or in any manner dispose of the same but to retain the same for the use of herself and her children forever.

"And we warrant the title of the same against all persons whomsoever.

"In witness whereof, we have set our hands this 19th day of March, 1881.
                            "[Signed]        Wm. West.
                            "[Signed]        Elizabeth West.

"State of Iowa, Decatur County—ss. Before me, the undersigned, a justice of the peace, in and for said county, this day personally appeared Wm. West and Elizabeth West, husband and wife, who are personally known to me to be the identical persons whose names are affixed to the foregoing deed as grantors; and acknowledged the same to be their voluntary act and deed.

"Given under my hand and official seal this 19th day of March, 1881.
                            "[Signed]        John West, J. P."

The petition then alleges that the plaintiff's are the children of said Elmira Hubbird, and her only children; that said Flossie E. Hubbird was born September 30, 1886; that said Ethel Hubbird was born October 17, 1888; that said Mary Hubbird was born September 9, 1890; that said Ora Hubbird was born January 12, 1894; that said Lottie Helen Manly was born October 20, 1876; and said Elsie Bennett was born August 24, 1879, and that Elmira Hubbird, the mother, departed this life, at Decatur, in the state of Illinois, on the 31st day of March, 1902, intestate; that pursuant to said deed of conveyance said Elmira Hubbird, on the 19th day of March, 1881, went into possession of said real estate, and so continued until the 15th day of February, 1883, when she, in connection with her husband, A. H. Hubbird, conveyed said land to the defendant, Thomas L. Goin, and surrendered possession to him; that the defendant claims to have acquired by said deed a fee-simple title to said premises, when in truth and in fact said deed only vested the defendant with the life estate in said real estate of Elmira Hubbird, while the fee thereto is vested in the plaintiffs as her children. The petition seeks to eject the defendant from the possession and to recover the rentals thereon.

To this petition the defendant demurred, on the ground that said Elmira Hubbird, by the terms of the deed from William West and wife, took a title in fee simple, which passed to the defendant by her said deed; that the restriction against alienation contained in said deed from William West to Elmira Hubbird was void and repugnant to the laws of the state of Iowa. The demurrer further interposes the objection that at the time of the making of said deed to said Elmira Hubbird, when she entered into possession of the lands, there were living and in being two children of said Elmira Hubbird and none other, to wit, Lottie Helen Hubbird, now Lottie Helen Manly, and Elsie Hubbird, now Elsie Bennett; and that said Flossie, Ethel, Mary, and Ora Hubbird have been begotten and born since the making of said deeds, and

since the defendant went into possession of said real estate, and that consequently they took nothing by said deed from William West to Elmira Hubbird; that if said Elmira Hubbird did not take under said deed the title in fee simple to said lands, then she and the children then in being took the title in fee simple as tenants in common, and the deed from said Elmira Hubbird to the defendant conveyed to him at least her undivided one-third interest in said land; so that said minor plaintiffs born since the making of said deed take nothing by inheritance from their said mother at her decease or other-wise. And, finally, that said petition shows on its face that as to the plaintiffs Lottie Helen Manly and Elsie Bennett the cause of action is barred by the statute of limitations of the state of Iowa.

The demurrer was sustained by the Circuit Court, and judgment entered thereon, to reverse which the plaintiffs below prosecute this writ of error.

Alexander McIntosh (James J. Finn and James H. McIntosh, on the brief), for plaintiffs in error.

Van R. McGinnis and Marcellus L. Temple, for defendant in error.

Before SANBORN, Circuit Judge, and PHILIPS and RINER, District Judges.

PHILIPS, District Judge, after stating the case as above, delivered the opinion of the court.

Section 2901 of the Iowa Code provides as follows:

"Every disposition of property is void which suspends the absolute power of controlling the same for a longer period than during the lives of persons then in being and twenty-one years thereafter."

In so far, therefore, as the provisions of the deed made by William West to Elmira Hubbird and children undertook to place a restraint upon the power of alienation by the grantee it was inoperative. Even without such statute, any restraint laid upon the power of alienation would contravene common-law right. 4 Kent's Com. 17. It does not necessarily follow, however, that because of such provision being ineffective as a restraint upon the power of alienation of whatever estate the grant conveyed, that it is inoperative to characterize the quality of the estate taken under the instrument. Thus, in Hurd v. Hurd et al., 64 Iowa, 414, 20 N. W. 740, while it was held that a condition which was inconsistent with the express grant might be void, yet the language expressing the condition will be construed, if possible, so as to be in harmony with the grant.

Transposing the structure of the deed, so as to preserve its essential terms and sense, and effectuating the manifest intent of the grantor, after the granting clause and in connection therewith, the deed should be read as follows: It is expressly agreed between the grantor and the grantee Elmira Hubbird in accepting this deed that she will not sell, convey, or incumber, or in any manner dispose of the same, but to retain the same to her own use during life and for her children forever. The common sense meaning is plain enough. The grantor, the father of Elmira Hubbird, knew that the infant children could not make an effective conveyance; and, as he designed to provide for the children of his daughter the fee after her death, he sought, by the attempt to lay upon her a re-

straint against alienation, to secure the estate in remainder to them. As the restraint was laid alone upon her, and not upon her children, the only effect of the statute was to qualify it as to her, leaving her free to convey by deed whatever interest she had.

The insistence of counsel for defendant in error is that the rule in Shelley's Case governs the construction of this deed; and so the learned judge of the Circuit Court ruled. That ancient rule of the common law has been formulated as follows by Chancellor Kent ·(4 Kent's Com. p. 225):

"When a person takes an estate of freehold legally or equitably under a deed, will, or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs or heirs of his body, as a class of persons to take in succession, from generation to generation, the limitations to the heirs entitles the ancestor to the whole estate."

—The purpose of which was that if an estate for life, or any particular freehold estate, be given by will or deed, with remainder to his or her heirs, the first taker is held to have the fee, and the heirs shall take, if at all, by descent, and not by purchase. So that the first taker has the right of disposition in fee, and the heirs take by descent only when no disposition has been made of the fee by the first taker. Tiedeman on Real Property, 425.

It is claimed for the defendant in error that the rule in Shelley's Case is recognized and applied by the Supreme Court of the state of Iowa, there being no statute of that state abolishing the rule. It is to be conceded to the defendant in error that if the Supreme Court of the state of Iowa has applied the rule in Shelley's Case to such a deed as the one in question it must be followed by this court, as it affects the title to real property situate within the state. McGoon v. Scales, 9 Wall. 23–27, 19 L. Ed. 545; DeVaughn v. Hutchinson, 165 U. S. 576, 17 Sup. Ct. 461, 41 L. Ed. 827. A brief review of the decisions of the Supreme Court of Iowa touching this question is therefore necessary.

The case principally relied on is that of Pierson v. Lane, 60 Iowa, 60, 14 N. W. 90. The deed there construed was as follows:

"We, John Pierson, and Sarah Pierson, his wife, * * * do hereby grant, bargain, sell and confirm unto Minerva Pierson, and the heirs of her body begotton by her present husband, the following described real estate [here follows description of the property]; to have and to hold the above granted and bargained premises unto the said Minerva Pierson, and the heirs of her body begotten by her said husband forever, to them and their own use, benefit and behoof."

The words "heirs of her body forever" brought the grant within the operation of the rule in· Shelley's Case, as the limitation by way of remainder was the same as "to his heirs or the heirs of his body," was to a class of persons to take in succession from generation to generation, in which case "the limitation to the heirs entitles the ancestor to the whole estate"; this for the obvious reason, assigned by Kent in his Commentaries, 216, that "the policy of the rule was that no person should be permitted to raise in another an estate which was essentially an estate of inheritance and at the

same time make the heirs of that person purchasers." As will be shown hereafter, the rule in Shelley's Case does not apply to a grant to A. and her children, "unless it appears that these words were used in the sense of heirs."

In the case of Case v. Dwire, 60 Iowa, 444, 15 N. W. 265, the conveyance was to C., "to have and to hold the same unto her, as her own and indefeasible estate, to be owned, controlled, managed, and, if desired, sold and conveyed by her, or those who may act for her as her legal representatives or guardians, during her life, with the condition that whatever part or parcel of said premises may be owned or held by her at the time of her decease, or of which she may die seized, or in which she may at that time have any right, title or interest, shall revert to, vest in and again become the absolute property of the grantor, or, in case of his death, to his lawful heirs, to the absolute exclusion and inhibition of all other persons or heirs." It was held that C., the grantee, took an absolute title in fee, and that the condition was repugnant to the fee, and therefore void. It was necessarily void for repugnancy because the grantor, after having conveyed his interest, undertook, by subsequent provision, to reserve a reversionary interest to himself. It is sufficient, however, of this case to say that all the authorities maintain that the fee in such case vests in the first taker for the obvious reason that it gave her the power to sell, and wherever that exists it carries with it the necessary implication that any deed which might be made by her would vest the purchaser with the fee.

In Broliar v. Marquis et al., 80 Iowa, 49, 45 N. W. 395, the conveyance was "unto Anna M. and her children and joint heirs with her and myself and Marcelley M. and Ella M." It was held that the words, "joint heirs with her and myself," were intended to show what children of Anna were to take after her; but that under the ruling in Pierson v. Lane, supra, and Case v. Dwire, supra, they took nothing, and that the land went in equal shares to Anna, Marcelley, and Ella. Aside from the fact that the instrument employed the term "heirs," indicating indefinite inheritance, the court reached its conclusion by arriving at the intention of the grantor.

Kiene v. Gmehle, 85 Iowa, 312, 52 N. W. 232, arose under a will which devised to the daughter the whole estate for and during her lifetime, to have and to enjoy the rents, issues, profits, and income of the whole estate, to her separate use and benefit during her natural life, and on her demise said estate was to descend and invest in such heirs of her body begotten, in fee simple. It was held that the daughter took an estate for life, and the rule in Shelley's Case was not applicable. The court declared its conclusion, based upon the following broad language taken from Bingham on Descents, 237, in speaking of the rule in Shelley's Case, that:

"It may, however, be trusted as a safe rule to follow in all cases of construction of contracts, conveyances, or wills that the intention of the parties, manifested by the reading of the whole instrument together in the light of attending circumstances, must control the meaning, and this general rule applies to the rule in Shelley's Case."

The court also quoted approvingly from Hileman v. Bouslaugh, 13 Pa. 351, 53 Am. Dec. 474, in discussing the rule in Shelley's Case, that:

"A devisor who uses words of limitation in an improper sense may so explain the meaning of them by other words in the context as to exclude his devise from the rule, for it operates only on the intention when it has been ascertained, not on the meaning of words used to express it. The ascertainment is left to the ordinary rules of construction peculiar to wills; but when the intention thus ascertained is found to be within the rule, there is but one way; it admits of no exception."

In Wescott v. Binford, 104 Iowa, 645, 74 N. W. 18, 65 Am. St. Rep. 530, Judge Robinson, in discussing the rule in Shelley's Case, would not concede that it obtained in its ancient rigor in the state of Iowa, and he emphatically said that the rule in Shelley's Case was not designed to defeat the intention of the grantor or the testator, but gave to certain words, as "heirs," such force and effect that when used they were conclusively presumed to show an intent to vest the estate in the first taker in fee. "Theoretically the rule was not applied to ascertain the intent of the grantor or testator, but to declare its effect when ascertained."

The case of Halliday v. Stickler et al., 78 Iowa, 388, 43 N. W. 228, was where the devise of real estate was followed by a provision that whatever is left of it after the death of the devisee shall be equally divided between his heirs. That, of course, devised an estate in fee, and not for life only, because there was present on the very face of the instrument a power in the first taker to sell.

Hambel v. Hambel, 109 Iowa, 459, 80 N. W. 528, was an unconditional devise to the widow, with full power as executrix to sell and convey, followed by directions to divide the property remaining at her death among his children, and in case she remarried two-thirds of the property then remaining was to be divided among his children. It was held that the widow took the fee under the first clause because it contemplated that she could exercise the power of absolute sale. The well-settled rule of law laid down in this and other cases, that where there is an absolute or unlimited devise of property a subsequent clause expressing a wish, desire, or direction for its disposition after death is that it will not defeat the devise or bequest, nor limit the estate or interest. The absolute devise stands, and the other clause is regarded as presenting precatory language only.

In the case of Teany v. Mains et al., 113 Iowa, 53, 84 N. W. 953, it was held that although the granting clause in the deed did not contain words of inheritance, but recited that the conveyance was made for the sole use of the grantee and her heirs, that she was not to have the privilege of conveying or incumbering it, she took an absolute estate, and not as trustee for the heirs then living. As under Code Iowa, § 2913, a fee may be created without the word "heirs," the subsequent use of the word "heirs" was not inconsistent with the first grant, and therefore the condition imposed, being repugnant to the grant of the fee, was void. Inasmuch as by operation of the statute the word "heirs" was read into the grant-

ing clause, she took an absolute fee, and any effort thereafter to qualify it which was inconsistent with and contradictory thereof was void.

From this review of the Iowa decisions it cannot be said that that court has ever construed a deed like the one in question to come within the operation of the rule in Shelley's Case. Without stopping to inquire into the reasons or causes out of which this ancient rule had its origin, and conceding that it yet has recognition in some of the states where not interdicted by statute, it is not too much to say that it is not hospitably received and entertained in this country; and the courts, in recognition of the fact that it is little in accord with the genius of our laws affecting allodial estates in real property, are adverse to letting the rigor of the rule arbitrarily thwart the manifest intent and purpose of the grantor.

The learned judge below in his opinion said that, applying the rule in Shelley's Case to the deed, it would read as follows: "When Minerva Hubbird took an estate of freehold, and in the same conveyance an estate was limited to her heirs in fee, that the words 'heirs' are words of limitation, and not of purchase." By thus reading into the deed from William West the words "to Minerva Hubbird and her heirs," the grant was clearly enough made to come within the rule in Shelley's Case; but such is not the language of the deed.

The distinction between a grant to A. for life and remainder to her heirs, and a grant to A. for life with remainder to her children, is marked in the application of the rule in Shelley's Case. Tiffany, in his work on the Modern Law of Real Property (paragraph 25), in substance says that a deed to A. and his children cannot, at common law, convey an estate tail; and the word "children" can have no effect as a word of limitation defining the interest A. is to take, and must take effect, if at all, as a word of purchase, generally giving the children of A. living at the time of the grant a joint estate with A. in the property; but generally a devise to A. and his children, while there is a presumption that the word "children" is one of purchase and not of limitation, it is not a conclusive presumption, depending upon whether the context shows that the word was used in the sense of heirs of the body. He furthermore says that in some cases the word "children" in a conveyance to A. and his children is construed as a word of purchase, giving the children a remainder and not joint interests with A. But he further says: "By the weight of authority, such a conveyance, without any indication of an intention to the contrary, gives joint interests to A. and the children then living." So that in his view the question is more or less controlled by the intention of the grantor, to be gathered from the instrument.

Washburn on Real Property (volume 2, 5th Ed., 599) says that if upon a devise to A. for life, remainder to the children of J. S., if J. S. has children at the testator's death, they would take a vested remainder; and that if he were to have other children during the life of A., and before the remainder was to take effect in possession,

it would open and let in the children born during A.'s life, who would take shares as vested remaindermen. On page 633 he says that where the limitation of the remainder is to a son or sons, or to "children," and the like, of him to whom the first estate for life is limited, if the term "heirs" is clearly intended as descriptio personae the individual or persons thus designated take as purchasers, and do not come within the rule in Shelley's Case. On the other hand, if the term made use of in the limitation is "son" or "child" in the sense of "heirs," and not as designatio personae, but comprehending a class to take by inheritance, it is a term of limitation, and presents a case within the rule in Shelley's Case. And, further, that "the context in these cases may be resorted to to get at the sense in which the term or terms are used."

Tiedeman (paragraph 434) says:

"But limitation to the sons, children, or issue of him who takes the life estate will not be converted by the rule (in Shelley's Case) into a fee in the first taker, unless they are created by will, and from a consideration of the whole will it appears that these words were used in the sense of heirs. And the strongest and clearest evidence is necessary to give this construction to the words 'sons' or 'children.' It is easier to apply this construction to the word 'issue.' The general rule is that persons thus described take as purchasers and not by descent, and that the remainders are vested as soon as persons corresponding to the description come into being. * * * The intermediate limitation is not destroyed by merger of the estate in possession and the remainder under the operation of the rule in Shelley's Case."

What office the employment of the word "children" instead of "heirs" performs in a given deed or devise, whether as words of purchase or limitation, is, in the view of the best-considered authorities, largely one of intent, to be ascertained, not from any one part of the instrument, but from its four corners:

"As in the case of all contracts, the intent of the parties to the deed, when it can be obtained from the instrument, will prevail, unless counteracted by some rule of law. * * * Although the form of a deed may be unusual, the intention of the grantor, when it appears, must be given effect, and the deed will not be declared void unless the various clauses are so repugnant as to leave no other course to be followed." Devlin on Deeds, §§ 836, 836a.

Chief Justice Kent in Jackson v. Myers, 3 Johns. 388, 395, 3 Am. Dec. 504, said:

"The intent, when apparent and not repugnant to any rule of law, will control technical terms; for the intent, and not the words, is the essense of every agreement. In the exposition of deeds the construction must be upon the view and comparison of the whole instrument, and with an endeavor to give every part of it meaning and effect."

In Hancock v. Watson, 18 Cal. 137, it is said:

"In construing an instrument, that construction is always to be adopted which will accomplish the object for which the instrument was executed."

In Prentice v. Duluth Storage, etc., Co., 58 Fed. 438, 7 C. C. A. 293, this court thus expressed the rule:

"In construing a deed the court may put itself in the place of the grantor for the purpose of discovering his intention, and then, in view of all the facts and circumstances surrounding him, consider how the terms of the deed may affect the subject-matter."

This rule of construction obtains in Iowa. In Broliar v. Marquis et al., 80 Iowa, 49, 45 N. W. 395, where the language of the conveyance was somewhat involved and uncertain, the court said:

"If we should eliminate from the deed the words, 'and her children and joint heirs with her and myself,' the intention of the grantor could hardly be said to be doubtful, and in that case the position of the appellant would certainly be correct. We must, then, inquire if the words so obscure the intent of the grantor as to entirely avoid the conveyance, and, if not, to what extent the words change the meaning given the deed without their use. The intent of the parties must be the guiding star of interpretation."

In Hopkins v. Grimes, 14 Iowa, 73, the court said:

"The object of all rules of interpretation is to discover the intention, and this should be gathered from the whole instrument."

This is approved in Kiene v. Gmehle, 85 Iowa, 316, 52 N. W. 232.

It is to be conceded, however, that where, by the legal import of the words employed in the conveyance, as the words are construed at common law, it fixes the character of the grant and concludes any question of intent.

It may be conceded for the purpose of this case that if the deed in question had stopped with the granting clause to Elmira Hubbird and children, it might, with plausibility, be said that the mother and the two children in esse took the whole fee as tenants in common. The case of King v. Rea et al., 56 Ind. 1, cited in this connection by defendant in error, is hardly in point. So much of the grant in that case as is pertinent to this inquiry was "to Martha W. Rea and her children and their heirs and assigns forever." It was held that the deed vested the title in her and her children then in being, in common, but those begotten and born thereafter took nothing. It is to be observed again, of this case, that there occurs the words "their heirs and assigns forever." As there can be no heir of the living, and the grant was in præsenti, the after-born heir could not take; and as they were to take as conditional remaindermen, and not by purchase, it was held to bring the case within the rule in Shelley's Case.

In the later case from Indiana of Jackson v. Jackson et al. (Ind. Sup.) 26 N. E. 897, Elihu M. Jackson had certain children of his body living at the time of making the deed. The deed conveyed "to Elihu E. Jackson for life, and after his death to the then living children of his body, for the sum of natural love and affection and two dollars," with the recitation: "And the grantor hereby reserves the right to her living off of the above-described real estate during her natural life; and it is expressly understood that said Elihu E. Jackson, the grantee, is to have no greater interest than a life estate, and that at his death said tract shall go to the children of his body then living." The question was as to whether the children living at the time of the making of the deed and at the death of the grantor took the fee in the land, or whether the case was governed by the rule in Shelley's Case. The court said:

"That the children took the fee we think there can be but little doubt. They were then in being. They were capable of taking, and we think the deed as

completely vested the title in them as if they had been named in the deed. There is no room for doubt as to the intention of the grantor."

The court then adverts to and reaffirms the ruling in the case of Sorden v. Gatewood, 1 Ind. 107, where the conveyance was to Sarah Gatewood during her natural life, and to her children and their assigns forever, to have and to hold, etc., to the said Sarah during her natural life, and to her children and their assigns forever. Of which the court said:

"There being no words of inheritance in the conveyance described in the replication, and those used—'her children'—being words of purchase, and not of limitation, the rule in Shelley's Case does not apply, and a fee simple was not vested in Sarah Gatewood. She took an estate for life, and her children a vested remainder, whether for life or in fee it is immaterial now to inquire. We think the only fair construction which can be placed upon the language used in the deed is that the grantor intended to part with all her interest in the land except the retaining her living off of it, and that she intended to only give to the appellant a life estate, and vest the remainder in the children of the appellant, and the fee vested in the children of the appellant at the time of the execution of the deed. It does not appear that any children were born to the appellant after the execution of the deed, or that any living at that time have died, and no question is presented as to the rights of the survivors or those born after the execution of the deed. There are no such words of inheritance used in this deed as to bring it within the rule in Shelley's Case, and give to the grantee named a fee simple, as contended on the part of the appellant. The words 'children of his body' are used as words descriptive of a class who are to take the fee."

In Bodine's Administrators v. Arthur, 91 Ky. 53, 14 S. W. 904, 34 Am. St. Rep. 162, the granting clause was to Mrs. Bodine, habendum to Mrs. Bodine, and to her children by him (her husband) begotten. The first contention was that the habendum clause was repugnant to the grant, and was therefore void. The court said:

"But where it appears from the whole conveyance and attendant circumstances that the grantor intended the habendum to enlarge, restrict, or repugn the conveying clause the habendum must control. It is, in such case, to be considered as an addendum or proviso to the conveyancing clause, which, by a well-settled rule of construction, must control the conveyancing clause or premises, even to the extent of destroying the effect of the same. This is so, because it is the last expression of the grantor as to the conveyance, which must control the preceding expression. * * * Such conveyances give to the named vendee a life estate, remainder to the children. This construction grows out of the fact that as there must be parties, vendors and vendees, in order to make a valid conveyance, none but parties vendees can take a present estate. Such parties may be designated by their proper names, or by such other designation as will identify the particular persons meant as vendees. In this case the expression 'her children by W. R. Bodine begotten' does not identify the particular individuals who are to take, because they, or some of them, may hereafter be born. Hence they cannot be deemed parties vendees in the sense of taking an immediate estate, but they take an estate in remainder. Such conveyances, thus construed, are effective, otherwise not; and as it must be presumed that the grantor intended all the parts of the deed to have the effect that the law gives to the language used, consequently it must also be presumed that he intended to grant a life estate, with remainder, unless, as intimated, the contrary intention appears."

In Smith v. Upton, 12 Ky. 27, the conveyance was "to Mrs. Smith and her children," the consideration moving from Mrs. Smith's husband. It was held that the intention of the parties is gathered from the language of the deed, as such language is explained by at-

tendant circumstances and the relation of the parties, and must control; that it was evidently the intention of the husband to give the whole estate to his wife and their children, for whom he was under equal obligation to provide. This purpose could only be effectuated by giving to the wife a life estate, remainder to the children. Whereas, if the instrument were construed as giving the wife and children a joint estate in fee, it was calculated to defeat the intention by the wife's interest passing to her children by a second marriage, who would be strangers in blood, and to whom the grantor was under no legal or moral obligation to provide. To give to the wife and the then children a joint estate would defeat the intention of the grantor as to subsequent born children.

In Elmore et al. v. Mustin, 28 Ala. 309-314, a father, in consideration of natural love and affection, conveyed to his daughter and her children, by present words of gift, several negroes and other property, "to have and to hold unto the said Sarah, her executors and administrators, forever, as her and her children's property"; the deed reserving the use and possession of the property to the donor during his life. It was held that it created a life estate in the said Sarah, with a quasi contingent remainder to such of her children as might be living at her death. Chief Justice Goldthwaite said:

"The donor virtually reserves to himself a life interest in the property, and, with this reservation, he gives it to Sarah M. Elmore, 'and to her children, the natural heirs of her body, at her death.' The interest of Mrs. Elmore is not, as has been urged, converted into an absolute gift, on the principle applicable to estates tail; for the word 'children' is here explanatory, and restrictive of the words immediately following it, and presents a stronger case than Dunn v. Davis, 12 Ala. 135, where the gift was to the 'heirs or children.' * * * The gift, it is to be observed, is to Mrs. Sarah M. Elmore for life, and 'to her children, the natural heirs of her body'; and we think that by the terms 'natural heirs of her body,' taken in connection with the word 'children,' the donor intended to limit the gift to the children who were heirs; and upon the principle, 'Nemo est hæres viventis,' the limitation could only extend to the children living at her death, thus giving them a quasi contingent remainder."

In Pennsylvania where the rule in Shelley's Case obtains, and where it was at one time held that a conveyance to A. and her children was in præsenti, therefore A. and the then living children took as tenants in common, the correctness of this ruling, in the constant struggle and progress of the law to effectuate the intention of parties making grants, was challenged and overthrown in Coursey v. Davis, 46 Pa. 25, 84 Am. Dec. 519. So. Mr. Justice Strong, in White v. Williamson, 2 Grant, Cas. 249, where the deed was to A. "for the use of the wife and children of B.," said:

"Under that declaration what interest did she take? Was it a life estate, with remainder to her children, or was it a tenancy in common with them? The court below thought it was the former and so instructed the jury. We incline to concur in that opinion. Under that declaration the children take as a class, not individually. The grant is not to the children then in esse, but it embraced those after-born. It was the gift of a father for the benefit of his descendants. If the time of the distribution was the date of the gift, then after-born children must have been excluded; for where a gift is to a

class, the rule is that the time of distribution defines the individuals who constitute the class."

See, also, Hague v. Hague et al., 161 Pa. 643, 29 Atl. 261, 41 Am. St. Rep. 900, where it is held that a gift to Sarah Hague and her children is a gift of a life estate to the mother, with remainder in fee to the children as a class.

The discussion of this question by Chief Justice Beard in Blackburn v. Blackburn, 109 Tenn. 674, 73 S. W. 109, commends itself as well for its reason as its justice. The deed was from the father to his daughter and her children forever; and in a subsequent clause the deed provided that, in case the daughter died before her husband, he should have 400 acres of the land during his life, which at his death should go to said children and bodily heirs of the daughter. At the date of the deed Mrs. Blackburn had four children. Subsequent to the delivery of the deed there were born to her five other children. The contention made was that the mother and the then living children took as tenants in common all the land, to the exclusion of the after-born children. It was held that the deed created a life estate in the daughter and her husband, with a vested remainder in the children living at the date of the deed, which opened and admitted the after-born children. The learned judge conceded that a conveyance to a mother and her children, without any qualifying words, "is often held to be one in præsenti, vesting the title in the then living children and the mother as tenants in common, and by construction of law excluding children coming into being thereafter. In the cases where this has been held, the rule is rested either upon the idea that a freehold could not be created to take effect in futuro, as at common law livery of seizin was essential to such estate, or else upon an implication from the instrument of an intention upon the part of the grantor that the title should pass to the living children as if they had been named therein (citing authorities). But if the deed, when taken altogether, discloses a purpose upon the grantor's part that all the children of the mother, without regard to the time of their birth, shall become beneficiaries of the property conveyed, then to effectuate this purpose the mother will be converted into a tenant for life, and the children into remaindermen, the remainders vesting in those living at the date of the instrument, and the estate opening upon the subsequent birth of children so as to embrace them. * * * And a slight indication will induce the courts to adopt the construction of the deed which will effectuate the intention of the grantor. Moore v. Simmons, 2 Head, 546; Beecher v. Hicks, 7 Lea, 207."

He then proceeded to state that, if it had been the purpose of the grantor to limit the estate to the benefit of the children in esse, it would have been easy to do so by words or terms indicating such purpose, and that, as there could be assigned no sufficient reason why the children in being should be more the objects of his beneficence and solicitude than the after-born children, it would be a perversion of justice to exclude the latter.

Turning to the deed of William West to his daughter and her

children, we inquire what possible motive could the father and grandfather have had to provide alone for the minor children in esse? His daughter, as the sequel proved, was a vigorous woman bearing children in regular order, with probable prospects of continued production. The deed on its face shows that love and affection in part moved him to its execution. In the very nature of a kindly heart, the after-born children would be as much the objects of his affection and the concern of his solicitude and providence as those in being. This strong, natural impulse should accentuate the fact that if the grandfather had intended to limit the deed to the living children he would have employed some term, some word, to indicate it. On the contrary, in the habendum clause, where he expresses a purpose to secure the estate, after the mother was gone, forever to the use of the remaindermen, he employed the comprehensive term "her children." And as the term "her children," thus employed, did not indicate inheritance, and they were not words of limitation, but descriptive of the beneficiaries, eo nomine, to take under the deed, the children living at the time of the mother's death took as purchasers, and therefore the rule in Shelley's Case should not apply.

While the deed was inartificially drawn, we cannot, on taking the deed and reading it by its four corners, escape the conviction that it was the mind and purpose of William West to vest in his daughter a life estate and to secure the remainder in her children, and we are unwilling to sacrifice this manifest purpose by giving a broad application of a most technical and harsh rule, like that established in Shelley's Case.

We hold that under the deed from William West, Elmira Hubbird took a life estate and the two children in esse a vested remainder therein, and upon the birth of after-born children the estate in remainder was opened for their admission, and that upon the death of the mother the surviving children became entitled to the possession, and are entitled to maintain the action of ejectment, unless barred by the local statutes of limitation.

Section 4223 (Code 1897) provides that:

"An action to determine and quiet the title of real property may be brought by any one, whether in or out of possession, having or claiming an interest therein, against any person claiming title thereto, though not in possession."

The period of limitations in real actions in the Iowa statutes is 10 years. Under section 3188 of the Code a woman attains her majority at the age of 18 years, and the petition shows that Lottie Helen Manly was 18 years old on the 20th day of October, 1894, and that said Elsie Bennett became 18 years of age on the 24th day of August, 1897. By section 3453 of the Code it is provided that:

"The time limit for actions hereunder, except those brought for penalties and forfeitures, shall be extended in favor of minors and insane persons so that they shall have one year from and after the termination of such disability within which to commence said action."

On the theory, therefore, that Elmira Hubbird took a life estate and the children then in being an estate in remainder, their right

of action is barred. Marray v. Quigley, 119 Iowa, 13, 14, 92 N. W. 869, 97 Am. St. Rep. 276. The right of action, however, not being barred as to the other children, the court erred in rendering judgment on the demurrer against all of the plaintiffs.

It results that the judgment as to the plaintiffs, Lottie Helen Manly and Elsie Bennett, is affirmed, and reversed as to the other plaintiffs, with directions for further proceedings in conformity with this opinion.

RINER, District Judge (dissenting). I am unable to concur in the foregoing opinion of the court in this case. The deed was made in Iowa, and must be construed according to the laws of Iowa, as interpreted by the Supreme Court of that state. Following the rule of construction in the case of McCleary v. Ellis, 54 Iowa, 311, 6 N. W. 571, 37 Am. Rep. 205, as I understand it, the condition against alienation contained in this deed is void. I think the deed conveyed the estate to Elmira Hubbird and her children then in existence only, and that it cannot be construed as a conveyance to the children not then begotten. Elmira Hubbird and her two children then in existence would, therefore, take the estate as tenants in common. The limitation upon the power of alienation attempted to be made in the deed being void under the decisions of the court of last resort of the state of Iowa, Elmira Hubbird could and did, by her deed, convey her interest in the land to the defendant in error. The interest of the two children in existence when the deed was made is barred under the statutes of Iowa. Marray v. Quigley, 119 Iowa, 13, 92 N. W. 869, 97 Am. St. Rep. 276.

I think the case should be affirmed.

### On Petition for Rehearing.

PHILIPS, District Judge. Many of the criticisms made in the petition for rehearing of the former opinion herein are either based upon a faulty construction of the language employed or a misconception of what was really decided. There is but one question raised by the petition deemed worthy of consideration, and that is that the Supreme Court of Iowa, in Doyle v. Andis, 102 N. W. 177, decided since this case was submitted, has held that the rule in Shelley's Case is in force in the state of Iowa. This decision was by a divided court—three to two. On reading both the majority and minority opinions, the candid mind must concede that the intimation, made in the original opinion herein, that it was an open question as to whether or not the rule in Shelley's Case was by the prior decisions of that court established in all its ancient rigor in the state of Iowa, was a justifiable suggestion. All that was affirmatively held in the former opinion herein touching this matter is that the Supreme Court of that state had never applied the rule in Shelley's Case to a deed like the one in question, which, read by its four corners, clearly indicated the intent of the grantor to convey a life estate to his daughter, with the remainder to her children. The conveyance construed in the Doyle-Andis Case was to Andis "dur-

ing his natural life, and then to his heirs." This was held by the majority opinion to come within the rule in Shelley's Case, and to vest the absolute fee in the first taker. With this application of the rule we make, and have made, no controversy, because the same instrument conveying a life estate made the limitation by way of remainder of another interest of the same legal quality to his heirs, as a class of persons to take in succession, from generation to generation. It is quite clear, both from the reasoning and authorities of the majority opinion, and the discussion of the minority, that if it had been to A. during his natural life, and then to his children, the grant would have escaped the meshes of the rule in Shelley's Case, and the children would have taken as purchasers, and not by inheritance. The very term "heirs" implies inheritance, or taking by succession.

According to the maxim, "Nemo est hæres viventis," there can be no heir of a living person. Therefore the estate in remainder could not vest during the life of the ancestor. It must pass by devolution, and the heir takes "in succession from generation to generation," so that the "limitation to the heirs entitles the ancestor to the whole estate." The term "her children," under such a deed as that made by West, the grandfather, is descriptio personæ, and as such "they at once indicate the objects and limit the scope of the gift," and become words of purchase. This, we think, is clearly deducible from the postulate laid down by Hargrave (1 Hargrave, Law Tracts, 575, 577), quoted with approval by the majority opinion in Doyle v. Andis, supra:

"When it is once settled that the donor or testator has used words of inheritance according to their legal import, has employed them intentionally to compromise the whole line of heirs to the tenant for life, and has really made him the terminus or ancestor by reference to whom the succession is to be regulated, then it will appear that, being considered according to those rules of policy from which it originated, it is perfectly immaterial whether the testator (or donor) meant to avoid the rule or not, and that to apply it, and to declare the words of inheritance to be words of limitation, vesting the inheritance in the tenant for life, as the ancestor and terminus to the heirs, is a mere matter of course. But, on the other hand, if the words of inheritance were not used in their full and proper sense, so as to include the whole inheritable blood, and make the tenant for life the ancestor or terminus for the heirs, but the testator intended to use the word 'heirs' in a limited, restrictive, untechnical sense, and to point at such individual person as should be the heir, etc., of the tenant for life at his decease, and give a distinct estate of freehold to such single heir, and to make his or her estate of freehold the groundwork for a succession of heirs, and constitute him or her the ancestor terminus and stock for the succession to take its course from, in every one of these cases the premises are wanting upon which only the rule in Shelley's Case interposes its authority, and that rule becomes quite extraneous matter. So, then, in order to ascertain, in every case, whether or not the rule is applicable, the inquiry simply is, in what sense did the testator or donor use the words? If in the former sense, the rule always applies, notwithstanding a positive declaration that it shall not. If in the latter sense, the rule is as invariably foreign to the case, the remainder is contingent until the death of the tenant for life, and the party named as heir takes by purchase."

With the views we entertain of the clearly enough expressed mind of the grantors, William West and wife, to provide for their

grandchildren as such, we are unwilling to thwart that will by going beyond any express decision of the state court in embracing the rule in Shelley's Case.

The petition for rehearing is overruled.

RINER, District Judge, dissents.