LEON F. WESTCOTT and BERNICE O. NALL v. F. L. MEEKER, GUY A. MEEKER, LORAINE MEEKER-ROWE, and SARAH T. MEEKER, Appellants.

**Shelley's case:** APPLICATION OF RULE: WILLS: LIFE ESTATES. The rule in Shelley's case was a rule of property in this State, until repealed, governing the courts in construing the rights of parties under conveyances, but is not to be applied to the construction of a devise for life, with the remainder over to the heirs of the devisee, where from the language of the will it fairly appears that it was the intention of the testator to give the devisee only a life estate; and any attempt by the devisee to convey the fee during his lifetime is ineffective as against the remaindermen.

**Wills:** LIFE ESTATES. A devise of property to a son to hold during his natural life, with the rents and profits for such time, and providing that he should have no power to convey for a period longer than his life, and that at his death the property should descend to his heirs, creates a life estate with a contingent remainder over to his heirs, vesting only at the death of the devisee.

**Life estates:** CONTINGENT REMAINDERS: CONVEYANCE OF FEE BY DEVISEE. A devise for life with the remainder over to the heirs of the devisee, the enjoyment depending upon a contingency which must happen, as the death of the devisee, creates a valid contingent remainder, and any attempted conveyance of the fee by the devisee during his lifetime is ineffective as against the interests of the remaindermen.

**Life estates:** RECOVERY OF REMAINDER: LIMITATIONS. Upon the devise of a life estate with the remainder over to the heirs of the devisee, and during his lifetime the devisee attempted to convey the fee to another, the statute of limitations did not commence to run against the interest of the heirs in the land until the death of the devisee, their interest not having vested until that time.

Same: ESTOPPEL. · Where remaindermen have no interest in the land devised until the death of the devisee, their failure to assert an interest therein prior to his death and while his grantees in possession under an attempted conveyance of the fee are improving the same, will not estop them from thereafter recovering the land.

*Appeal from Marshall District Court.*—HON. C. B. BRADSHAW, Judge.

WEDNESDAY, OCTOBER 27, 1909.

ACTION to quiet title. Plaintiffs' demurrer to portions of defendants' answer was sustained, and, on the election of defendants not to plead over, a decree was entered for the plaintiffs under a stipulation to that effect, with the reservation of the right of defendants to subsequently make claim for improvements under the occupying claimants act. The defendants appeal from the decree.—*Affirmed.*

*F. L. Meeker* and *Dudley & Coffin,* for appellants.

*Struble & Stiger,* for appellees.

McCLAIN, J.—John Westcott, under whose will plaintiffs claim title to an undivided three-fourths interest in the premises in controversy, a described parcel of lot eight, block eleven, in the city of Marshalltown, died in 1865, leaving surviving him a widow and certain children named in his will. The provisions of this will, which was duly probated, so far as they affected the title to the premises in controversy, were that the widow should have a life estate therein, and that said premises should pass at her decease to his son, Charles Alfred Westcott, "to have and to become possessed of the same at the death of my wife, Anna Westcott, and to hold the same during his, Charles Alfred Westcott's, natural life." Other parcels of said

lot, as well as of lot seven in the same block, disposed of in similar manner by the will, were devised in similar terms to other children, and the will contained this concluding paragraph:

My said children are to have the use, rents and profits of their portions of said lots numbered seven and eight in block No. eleven of the town of Marshall, respectively during the terms of their natural lives. They are to have no power to convey or dispose of the same, their respective portions for a longer term than during their natural lives respectively. At the death of my children aforesaid their respective portions of said lots, numbered seven and eight descend to their heirs respectively, said heirs to have absolute title unto their respective portions.

Charles Alfred Westcott died intestate in December, 1906, leaving surviving him four children, William, born in 1876, Clare, born in 1879, Leon, born in 1881, and Bernice (now Mrs. Nall), born in 1883. Prior to the commencement of this suit, William had conveyed any interest which he had in the premises to Leon, and Clare had conveyed his similar interest to defendant F. L. Meeker. In 1875 Anna Westcott conveyed her life estate to Timothy Brown and J. F. Meeker, and on the same date Charles Alfred Westcott, then a single person and in possession of the premises in controversy, purported to convey the same in fee with usual covenants of warranty to said Brown and Meeker, who thereupon entered into possession, which continued until 1876, when Brown sold his interest to Meeker, after which date Meeker continued in exclusive possession until his death in 1908. The defendants are the widow and heirs of J. F. Meeker, claiming through him the absolute and unqualified ownership of the premises. The claim of plaintiff is that on the death of their father, Charles Alfred Westcott, the contingent remainder which their grandfather in his will had declared should descend to their father's heirs became ab-

solutely vested in them to the extent of an undivided three-fourths thereof, the other one-fourth having as already stated been acquired in the meantime by one of the defendants.

Three propositions are relied upon for appellants: First, that while John Westcott described the estate devised to his son, Charles Alfred Westcott, as a "life estate," to take effect after the life estate given to his widow, and directed that at the death of said son the remainder in fee should vest in his heirs, the legal effect of such direction was to vest in Charles Alfred Westcott a remainder in fee simple after the termination of the widow's life estate, notwithstanding the specific language of the will that his said son should have the use, rents, and profits of the premises during the terms of his natural life, with no power to convey or dispose of the same for a longer term than during his natural life; second, that, even though the will should be construed as creating a contingent remainder in the heirs of said son, such remainder was cut off by the conveyance of the son before the birth of children; third, that the heirs of the son are barred and estopped from asserting any title to the premises after ten years of open, notorious, and adverse possession by them and those under whom they claim title.

I. The first proposition relied upon for appellants amounts simply to this: That by the rule in *Shelley's* case the language of the will purporting to create a life estate in Charles Alfred Westcott and a remainder in fee in his heirs must be construed as creating a fee-simple estate in the devisee named, notwithstanding the explicit statements in the concluding paragraph of the will that such devisee should have no other rights in or power over the property than those which pertain to life tenancy. This identical question was before this court in the case of *West-*

1. SHELLEY'S CASE: application of rule: wills: life estates.

*cott v. Binford,* 104 Iowa, 645, involving another parcel of property devised by testator to another child by similar language. In that case the court referred to two of its previous decisions, in which, as contended by counsel in argument, the rule had been recognized as in force in this State and pointed out the fact that both of those cases involved deeds of conveyance and not wills, and it then proceeded to say that there is a material distinction between wills and deeds of conveyance in the application of the rule in those jurisdictions in which the rule is recognized to be in force. Authorities are cited in the opinion to the proposition that the rule should not be so applied as to defeat the intention of the testator as expressed by other language than that employed in creating a remainder over in heirs after a life estate in the ancestor. If we are to adhere to the views expressed in *Wescott v. Binford,* further discussion of the applicability in the rule in *Shelley's* case is unnecessary. But in the *Wescott-Binford* case the court expressly held that there was no controlling decision in this State as to whether the rule in *Shelley's* case should be recognized as a rule of property, and assumed only to hold that it was not applicable in the controversy before the court, avoiding any announcement of opinion as to whether it was applicable in this State to conveyances. Since that case was decided we have expressly held that the rule is in force in this State as to conveyances. *Doyle v. Andis,* 127 Iowa, 36. And it is now contended that this decision overrules the decision in *Wescott v. Binford;* that the adoption of the rule in *Shelley's* case as to conveyance necessarily results in its application to wills; and that we must now hold that as a rule of property Charles Alfred Westcott had a fee under his father's will, and not a life estate with remainder to his heirs. We are not able to reach this conclusion.

The rule in *Shelley's* case had unquestionably been

recognized as a rule of property in the courts of England for three or four centuries before those courts determined the question whether it was a rule in the construction of wills, and when in 1769 the question was directly and definitely presented to the Court of King's Bench, then presided over by Lord Mansfield, in *Perrin v. Blake,* 4 Burr, 2579 (s. c., 1 Bl. 672), the Chief Justice, with the concurrence of two of the justices held that the rule should not be so applied as to defeat the manifest intention of the testator. From this conclusion one of the justices dissented. The case was taken on appeal to Exchequer Chamber, where six of the justices agreed in reversing the decision of the court of King's Bench, while two of them favored an affirmance. An appeal was taken to the House of Lords, but no decision was ever reached in that court; the appeal having been dismissed in 1777 as the result of a compromise between the parties. The controversy as to whether the rule in *Shelley's* case should be recognized as a rule of property, which has given rise to elaborate discussion in the opinions of courts and in law treatises, seems to have commenced with the decision of the court in *Perrin v. Blake.* But the only question in that case as appears from the published reports we have purporting to give the views of the justices as announced at the time was whether the language in the will in question, in substance the same as that found in the will of John Westcott, prohibiting alienation by the children of the testator, who were by the language of the will to have a life estate only, was a sufficient indication of an intention on his part that the devise to such children with remainder over to other heirs should not in accordance with the then recognized doctrine of the rule in *Shelley's* case create a fee estate in such children. As appears by the brief statement of the case in Burrow's Report (and the statement in W. Blackstone's Reports is even briefer and less specific), counsel for plaintiff argued

that, though the intent of the testator be ever so plain from
other parts of the will, the rule holds that the inheritance
must vest in the ancestor; while counsel for defendant con-
tended that, if the testator's intent was manifest from
other parts of the will, the word "heirs" might be con-
strued a word of description, and the heirs should take
the inheritance as purchasers. The majority of the Court
of King's Bench agreed with the contention for defendant,
while in Exchequer Chamber the majority held with the
plaintiff. The opinion of Mr. Justice Blackstone, which
was posthumously published in Hargreave's Law Tracts,
as expressing the views of the majority of the justices in
Exchequer Chamber (see 10 Eng. Ruling Cases, 689),
included a discussion of the reason and propriety of the
rule itself, and it seems to be assumed that Lord Mans-
field's statement of the views of the majority of the jus-
tices in King's Bench threw discredit on the rule in
*Shelley's* case as a rule of property. But the actual deci-
sion of a majority of the justices in the Court of King's
Bench was that the intention of the testator as expressed
in his will should be regarded as controlling, while a
majority of the justices in Exchequer Chamber thought his
intent should be disregarded in view of the fact that he
attempted to create a life estate with remainder over to
the heirs of the devisee which it was thought he could
not do. See 6 Cruise's Digest (Greenleaf's Ed.) 313.
Even Mr. Justice Blackstone conceded that, "if the intent
of the testator manifestly and certainly appeared (by plain
description or necessary implication from other parts of
the will) that the heirs  .  .  .  should take by purchase
and not descent," then the devise for life to the ancestor
did not create in him a fee, but he thought that the mere
description by the testator of an intent that the ancestor
should not dispose of the property for a longer period
than his life was not sufficient to control the application
of the rule.

It is to be noticed that the date of the decision in *Perrin v. Blake* does not make it an authority as to what the common law was on this question at the time the common law was brought to this country. This decision and subsequent decisions of the English courts adhering, though with constant difficulty, to the decision in Exchequer Chamber, are of no greater weight with us than the decisions on the same question which have been announced by the courts of our sister States in which the same question has been considered. Conceding, as we have expressly held in *Doyle v. Andis, supra,* that the rule in *Shelley's* case is a part of the common law in determining the effect of conveyances and therefore a rule of property in all the States of the Union in which the common law on that subject was accepted, so far as not modified by statute, it is open to us, and it is our plain duty notwithstanding the final determination in *Doyle v. Andis* that the rule in *Shelley's* case is a part of the common law, to decide whether that rule is conclusive in the construction of wills and overrides the intention of the testator clearly expressed by language indicating his purpose that the devisee for life shall not have the power to convey any interest in the property which shall extend beyond the term of his life. A decision at this time that the expressed intention of the testator shall control, as against the rule in *Shelley's* case applied to the construction of a conveyance, would be in no way inconsistent with our recent decision in *Doyle v. Andis* that such rule as applied to conveyances has been with us a part of the common law and a rule of property binding upon the courts of this State in determining the rights under conveyances made prior to the recent repeal of the rule by statute. See Acts 32 General Assembly, Chapter 159. In other words, we can still adhere to the conclusions expressed in *Wescott v. Binford, supra,* without in any way impairing or modifying the views since expressed in *Doyle v. Andis.*

Although the conclusions of the English courts adhering to the decision of Exchequer Chamber in *Perrin v. Blake* were quoted in our opinion in *Doyle v. Andis,* they were so quoted only as indicating the continued recognition by the English courts of the rule as applied to conveyances, and nothing is said in that case to indicate an intention to overrule the case of *Wescott v. Binford,* or to accept the conclusions of the English courts relating to the application of that rule to defeat the expressed intention of the testator.

Even in the English courts it has been conceded by all the judges from Mr. Justice Blackstone to the present time that, if the intention of the testator was expressed in appropriate language, such intention would control as against the application of the rule in *Shelley's* case. Thus in *Jordan v. Adams,* 9 C. B. N. S. 483, and *Van Grutten v. Foxwell,* L. R. App. Cases (1897) 658, it was practically conceded in all the opinions handed down that the intention of the testator should control; the controversy being only as to whether the language in the will descriptive of the person's intent by using the word "heirs" was a sufficient indication of an intention inconsistent with the application of the rule in *Shelley's* case. The various opinions in the English courts to the effect that language expressly limiting the power of disposal on the part of the devisee to whom under the language of the instrument only a life estate is given to such disposal as he might make of a life estate are not inconsistent with the recognition of the paramount importance of the description of the testator's intent. The general rule recognized in all the courts that the testator's intent shall be carried out when it is ascertainable from the language used by him, taking the will as a whole, is uniformly applied, even as against the construction which would be given under the rule in *Shelley's* case to the specific description of the estates devised to the life tenant and his heirs, respectively. For

this purpose wills are to be construed more liberally than deeds. Page on Wills, section 561; 1 Jones on Real Property, section 606; 2 Underhill on Wills, section 658.

Thus in *Ware v. Minot,* 202 Mass. 512 (88 N. E. 1091), the court uses this language:

The rule for the construction of wills followed by courts in recent times is to ascertain the intent of the testator from the whole instrument, attributing due weight to all its language, and then give effect to that intent unless prevented by some positive rule of law, rather than to try to make the interpretation of particular words or phrases in one instrument square with that before given to somewhat similar words used by some one else under other surroundings to accomplish a more or less different end. *McCurdy v. McCallum,* 186 Mass. 464, (72 N. E. 75). A few combinations of words have become so fixed in their meaning by long and unvarying use as to be rules of property. But ordinary canons for the interpretation of wills, having been established only as aids for determining testamentary intent, are to be followed only so far as they accomplish that purpose, and not when the result would be to defeat it.

And see *Schmidt v. Jewett,* 195 N. Y. 486 (88 N. E. 1110). In *Lord v. Comstock,* 240 Ill. 492, (88 N. E. 1012), the court recognizes the intent of the testator as controlling, though it limits itself in ascertaining that intent to a technical interpretation of the terms used in describing the interests devised, and manifestly thereby defeats the real intent of the testator, a learned lawyer (the late Harvey B. Hurd of the Chicago bar), thus throwing discredit, as it seems to us, upon the correctness of the application of such technical rules in ascertaining the testator's intent. In addition to the authorities cited in *Wescott v. Binford, supra,* to the effect that testator's intention will be carried out even as against the result otherwise indicated by the strict language of the rule as applied to the granting clause of the will, see *Chelton v.*

*Henderson,* 9 Gill (Md.) 432; *Findlay v. Riddle,* 3 Bin. (Pa.) 139, (5 Am. Dec. 355); *Swain v. Rascoe,* 25 N. C. 200, (38 Am. Dec. 720).

We are perfectly content, therefore, to adhere to the construction of this will given in *Wescott v. Binford, supra,* and we are satisfied that the opinion of the majority of the court in the more recent case of *Doyle v.*

2. WILLS: life estates.

*Andis, supra,* is not inconsistent with the conclusion there reached. Therefore we hold that Charles Alfred Westcott had only a life estate in the premises in question, and that he did not have a fee title when he executed his conveyance to Brown and Meeker.

II. The contention for appellants that, even though Charles Alfred Westcott took under the will only a life estate, nevertheless his conveyance by warranty deed to defendants' ancestor cut off the remainder to his heirs, is expressly based by counsel on

3. LIFE ESTATES: contingent remainders: conveyance of fee by devisee.

the views of this court announced in *Archer v. Jacobs,* 125 Iowa, 467. But in that case the remainder after the life estate created by the will was to the children of the life tenant who had children living at the time the will took effect, and the court held that the remainder was vested, although there was an uncertainty as to the extent of the interests which such children would come into enjoyment of on the death of the life tenant, owing to the uncertainty as to whether other children should not be subsequently born. The distinction between that case and the one before us is manifest. There the children in being took a vested remainder subject to a condition subsequent which might lessen the extent of their interest therein on the one hand or possibly enlarge it on the other, and we held that a combination of the life estate and this vested remainder subject to condition subsequent and the possible reversionary interest, all in one person, cut out any remote contingent interest of children yet unborn; while in this case the remainder,

instead of being vested, was necessarily contingent, until the termination of the life estate of Charles Alfred Westcott, for until that time no one could claim as his heir.

We do not deem it necessary to go into any elaboration on the subject of contingent remainders. Contingencies may be of various characters and the kind of contingent remainder referred to in *Archer v. Jacobs* is quite different in its characteristics than that involved in this case. It is sufficient to say that in the case before us there was a remainder entirely contingent, and necessarily remaining contingent, until the termination of the life estate, as to what particular person or persons should be entitled to enjoy it. It could only be rendered certain in that respect by the termination of the life estate. It was perfectly valid, for the contingency on which its enjoyment depended must necessarily arise in time; that is, Charles Alfred Westcott must die and must as presumption of law leave heirs surviving him, but the contingency as to what particular person or persons should turn out to be his heirs was one inherent in the very nature of the remainder and impossible of determination until his death. Birth of children to Charles Alfred Westcott was not at all essential to the ultimate vesting of the remainder. He would have heirs when he died, whether he had children or not. To hold that a conveyance by Charles Alfred Westcott during his lifetime would cut off the remainder to his heirs would be simply to hold that a remainder to heirs could not be created. When we have reached the conclusion that the rule in *Shelley's* case does not apply to merge the remainder to heirs in the life estate of Charles Alfred Westcott, we have necessarily decided that a conveyance by Charles Alfred Westcott during his lifetime would not defeat the remainder. The cases relied on for appellants are not in point because all of them involve remainders to children of the life tenant with the result that the remainder became vested at once if

there were living children (subject of course to a condition subsequent), or might vest before the termination of the life estate by birth of children to the life tenant. See especially *Anthracite Savings Bank v. Lees,* 176 Pa. 402, (35 Atl. 197); *People's Loan, etc., Bank v. Garlington,* 54 S. C. 413, (32 S. E. 513, 71 Am. St. Rep., 800); *Hubbird v. Goin,* 137 Fed. 822, (70 C. C. A. 320). It is plain that under the devise to Charles Alfred Westcott with remainder to his heirs, such remainder to heirs being valid, though contingent, a conveyance by Charles Alfred Westcott during his lifetime, although he purported to convey the fee title, could not cut off the remainder.

III.  The claim for appellants based on the statute of limitations is that conceding Charles Alfred Westcott to have had only a life estate (following the life estate to his mother), and that there was a remainder in fee to his heirs, such remainder, though contingent at the death of testator, became vested on the birth of children to him, and that these plaintiffs, his children, could have brought an action to quiet title against those under whom defendants claim title holding adversely under a deed from Charles Alfred Westcott purporting to convey the fee title, and that such action, not having been brought within the statutory period nor within one year after the plaintiffs attained their majority, cannot now be maintained. If the remainder had been to the children of Charles Alfred Westcott, the argument would have been pertinent to the facts. Whether it would have been sound we need not determine, for there is a fundamental difference between a remainder to children of the devisee for life and a remainder to the heirs of such devisee. If the remainder provided for in this will had been to the children of Charles Alfred Westcott, there would have been no occasion to discuss the applicability of the rule in *Shelley's* case, for that rule has no reference to a grant for life with remainder over to the

4. LIFE ESTATES: recovery of remainder: limitations.

children of the life tenant. *Brown v. Brown,* 125 Iowa, 218; *Hubbird v. Goin,* 137 Fed. 822, (70 C. C. A. 320). It is not pretended that there is anything in the language in the will under consideration to indicate that by reference to the heirs of Charles Alfred Westcott the testator intended to designate his children, or that the usual meaning of the word "heirs" was to be restricted so as to apply only to his children as such heirs. If he had remained unmarried, he would have had heirs at the time of his death. But during his lifetime he had no heirs, on the fundamental principle that there are no heirs to a living person. In other words, the remainder to the heirs of Charles Alfred Westcott was contingent in this sense that until his death it could not be determined what person or persons corresponded with that description so as to be entitled to enter into the property on the termination of his life estate. But instantly on his death the remainder vested in those persons who at at that time were entitled to take his property as his heirs. It is plain, therefore, that his children when they were born acquired no vested interest. They had no right in possession nor in expectancy which they could assert as against defendants' ancestor in possession of the property under a deed from their father, the life tenant. Had the remainder been devised to Charles Alfred Westcott's children, then it might well be that the possession under his deed should be regarded as adverse to them under the reasoning adopted in the case of *Elder v. McClaskey,* 70 Fed. 529, (17 C. C. A. 251), to which counsel have called our attention. But, until the determination of the life estate, it was impossible to know who would take as heirs, and therefore no interest became vested until that time under the devise to heirs. *Robinson v. Palmer,* 90 Me. 246, (38 Atl. 103); *Madison v. Larmon,* 170 Ill. 65, (48 N. E. 556, 62 Am. St. Rep. 356); 2 Underhill on Wills, section 610. We have no occasion, therefore, to discuss the question whether on the vesting

of a contingent remainder during the life estate upon which it is limited the remainderman may bring an action to quiet title against a grantee of the life tenant, and may be barred by the statute of limitations on his failure to do so within the prescribed period of limitation for such actions.  If prior to the death of Charles Alfred Westcott these plaintiffs had brought an action to quiet title against defendants' ancestor in possession of the premises, a complete answer would have been that as yet no interest had vested in them, that they might not be the persons coming within the description "heirs" of Charles Alfred Westcott at his death, and that they had no interest in the property to sustain any such action.  We have no occasion, therefore, to discuss the cases of *Marray v. Quigley,* 119 Iowa, 6; *Crawford v. Meis,* 123 Iowa, 610, and *Hubbird v. Goin,* 137 Fed. 822, (70 C. C. A. 320), on which counsel rely.

The same considerations dispose of the contention that plaintiffs became estopped to assert any claim to the property by failure to assert such claim against defendants or

5. SAME:
estoppel.

those from whom they took title, knowing them to be in possession, making valuable improvements under a claim of title.  As already said, until the death of their father, they had no interest in the property.  They had not yet come within the description of his "heirs."  Their father died only within one year preceding the institution of this action, and it is not contended that anything which occurred subsequent to his death would give rise to an estoppel as against the rights of plaintiffs to maintain such action.

The decree of the lower court is therefore *affirmed.*