DUNCAN K. ROSS et ux., appellees, v. GEORGE H. ROSS et ux., appellants.

GEORGE H. ROSS, counterclaimant and cross-petitioner;
BOHEMIAN SAVINGS & LOAN ASSOCIATION, defendant to cross-petition.

· No. 51247.

(Reported in 126 N.W.2d 369)

FEBRUARY 11, 1964.

REHEARING DENIED APRIL 8, 1964.

White & Stone, of Marion, and Lynch, Dallas, Smith & Harman, of Cedar Rapids, all for appellants.

Robert C. Nelson and Thomas H. Pirnie, both of Cedar Rapids, for appellees.

Fred H. Kubicek, of Cedar Rapids, for defendant to cross-petition.

SNELL, J.—This is an action to quiet title with a counterclaim and cross-petition for partition of a 40-acre tract of land known in the record as the "Conway 40."

It results from and is an unfortunate family squabble within a previously amicable and cooperating group. It would seem that the value of the interests actually involved would be far from compensable for the discord and litigation engendered.

Harold J. Ross and Mabel M. Ross are the parents of three adult sons, Duncan K., one of the plaintiffs; George H., one of the defendants; and Donald M. Jimmy Lou Ross, one of the plaintiffs, is the wife of Duncan K. Ross. Jean N. Ross, one of

the defendants, is the wife of George H. Ross. Bohemian Savings & Loan Association is a mortgagee of the land in question and a defendant to the cross-petition. The real issues are between Duncan and George.

In June 1949 Harold J. Ross, the father, was the owner of several different enterprises and considerable property in Linn County, including a tract of timberland and pastureland of over 500 acres. This land was commonly referred to in the family as "The Ranch." The several parcels of land included had been acquired at different times. A forty-acre tract called the "Conway 40", involved in this litigation, was a part of "The Ranch."

Except for periods for schooling and military service the sons all worked with the parents in their various enterprises until trouble among them developed in 1955. Title to some additional family operated land was in George and some in Donald. Duncan, the youngest son, had no land in his name.

In June 1949 Harold J. Ross, the father, was in need of ready cash and refinancing. He was not insolvent and there is no suggestion that anything that was done was to defraud or delay creditors. There appeared to be a possibility that because of some activity with his brother liens totaling about $200 might be filed against his real estate. For what now do not appear to have been very sound reasons Harold J. Ross and Mabel M. Ross deeded by separate deeds the various tracts making up the ranch to Donald M. Ross and Ruthanna W. Ross, at that time husband and wife. The express consideration was love and affection. No payments of any kind were made by anyone to the grantors as consideration for the deeds.

Donald M. Ross and Ruthanna W. Ross completed the refinancing needed, mortgaged the ranch, paid off the prior mortgage and turned over to Harold J. Ross and Mabel M. Ross the remaining loan proceeds.

Subsequent to this mortgage transaction, but during the same year, about four acres were sold to the City of Cedar Rapids. From the sale proceeds of about $4,000, $1,000 were applied on the mortgage for a release of the four acres. The remainder was paid to Harold J. Ross and Mabel M. Ross, the parents.

During this period of time in 1949 Donald M. Ross and his

then wife, Ruthanna, the grantees in the deed referred to above, were having domestic trouble. Attempts at reconciliation were in progress but the possibility that peace and tranquillity might not prevail or that something might happen to Donald or Ruthanna prompted the execution of a written instrument personally prepared by Donald. It was as follows:

## "TRUST AGREEMENT

"We, Donald M. Ross and Ruthanna W. Ross, husband and wife, do hold title in fee simple of the three parcels of land known to the Ross family as the Griffith farm, the Conway '40' and the Willman ranch containing 535 acres, more or less. We hold the title in trust equally for the following named persons: Harold J. Ross, Mabel M. Ross, Donald M. Ross, George H. Ross and Duncan K. Ross.

"In this agreement, any debts or income is to be divided equally among the above five mentioned beneficiaries of the trust. Any transfer or transaction in relation to the land will be determined by the majority decision of the beneficiaries.

"Signed on this 7th day of June, 1949.

"Donald M. Ross

"Ruthanna W. Ross

"Filed for record February 13th, 1954 at 11:25 A.M.

"Dempsy Jones, Recorder"

To call this instrument an "agreement" is a misnomer. It is an admission of limitation on the fee title, but it is not in itself an agreement.

Donald M. Ross and Ruthanna W. Ross were subsequently divorced. She was not a participant in the present litigation.

No one claims that by the deed to Donald, Harold J. Ross intended to convey anything but the legal title or intended to divest himself of the equitable title or right of control.

It should be kept in mind that in the case at bar the situation differs from that found in most of the reported cases. Both the grantor and the grantee in the original deed from Harold J. Ross and wife to Donald Ross and wife agreed and affirmatively testified that nothing but the naked legal title was intended to pass and that no equitable interest or title ever vested in or was

intended to vest in Donald Ross, the grantee. It is apparent from the record and from the testimony of both parties to the transaction that nothing but a straw man transaction was ever intended or created. It should also be kept in mind that George Ross, the defendant who claims to be a beneficiary under the so-called trust agreement of June 7, 1949, does not even claim to be an innocent purchaser for value or that there was ever any consideration of any kind incident to the so-called "Trust Agreement." There is ample evidence that George was aware of the true situation.

Donald Ross testified in part and in substance as follows:

"The understanding that I had, and my then wife, with my parents, Harold J. and Mabel M. Ross, was that we were to hold the property for them, to watch out for it and to handle it as if we were them, to make payments, receive payments at their direction, and that in case something should happen to either my father or my mother during the time that we held that title, that I was to see that the property would be equally held for my brother George and my brother Duncan and myself. At such time as my father and mother directed or desired to have the property returned to them or transferred to anyone else, that I and Ruth Anna would so do."

In response to an inquiry as to whether George had been told of the understanding prior to the conveyances the witness said: "My mother told him. My father told him. I talked it over with him."

This is corroborated by the testimony of Mrs. Mabel M. Ross.

After the so-called "Trust Agreement" was signed Donald put it in his safe. He testified:

"Q. Did you tell your brother George that you had drawn it up? A. I had told my brother George when we had talked about it that I was going to draw it up to embody the understanding so there wouldn't be any question the property wouldn't be just Ruth Anna's and mine, but that the three brothers would have that protection in case something happened to my father and mother."

This document remained with Donald until the spring of 1954. He was planning a trip west with his wife and children.

Duncan asked about the agreement. It was given to him and filed for record. The fact that the document was never acknowledged is apparently considered of no significance.

Except for Duncan the several families had homes of their own.

The "Conway 40" was until 1954 or 1955 unimproved. It was high, rolling, sandy, eroded, cut with ditches and ravines, but having some timber thereon. The only access was by a lane that could be traversed by a tractor. To this tract Duncan and his wife with their own labor cleared a path. They cleared a building area and started to build a home. They personally poured cement and laid blocks and performed most of the labor.

The several members of the Ross family, including George, approved of this home building project, and discussed the fact that to obtain financing Duncan should have title to the property.

On June 21, 1955, Donald M. Ross and his then wife conveyed by warranty deed the "Conway 40", the land involved herein, to Duncan K. Ross and Jimmy Lou Ross, husband and wife. The deed was promptly recorded. This transfer of title was by direction of Harold J. and Mabel M. Ross, the parents.

To obtain financing Duncan and his wife mortgaged the property to Bohemian Savings & Loan Association.

On November 17, 1955, Donald and his then wife by warranty deed reconveyed title to the remainder of the ranch to Harold J. Ross and Mabel M. Ross. This deed was filed for record the same day.

These transfers were subsequently approved in writing by all interested parties except George.

In the fall of 1955 discord developed in the Ross family. George made written and oral demands for dissolution and partition of interests. Partial (all except those relating to the ranch), although not very amicable, settlements were made.

George left one stormy meeting saying "I will cloud that forty."

On February 14, 1962, long after reconveyance of the property by Donald and Ruthanna, George filed in the office of the county recorder a long claimant's affidavit claiming a one-fifth interest in all three tracts originally comprising the ranch prop-

erty. His claim was based on the instrument of June 7, 1949, signed by Donald M. Ross and Ruthanna W. Ross.

This action by Duncan K. and Jimmy Lou Ross to quiet title followed.

George counterclaimed for accounting and cross-petitioned for partition and relief of his claimed interest from the lien of the mortgage placed thereon by Duncan and his wife.

I.  The case was tried and decided in the trial court on the theory that the deed of June 3, 1949, to Donald M. Ross and Ruthanna W. Ross did not in fact convey the whole title to them, but only the naked legal title; that this property was held, together with the remainder of the ranch property, by Donald M. Ross and Ruthanna W. Ross under a resulting trust by virtue of the original agreement with Harold J. Ross and Mabel M. Ross that they would make such conveyance or disposition as might be directed by Harold J. Ross and Mabel M. Ross or the survivor, and upon the death of the survivor any interest in the real estate not previously conveyed would be conveyed by Donald M. Ross and Ruthanna W. Ross to Donald M. Ross, Duncan K. Ross and George H. Ross in equal shares. These claims were denied by George H. Ross. By way of separate defense it was asserted that such oral agreement, even if made, would not be enforceable by reason of the provisions of sections 557.3 and 557.10, quoted infra, and subsection 3 of section 622.32, Code of Iowa, commonly called the statute of frauds, and that no parol evidence relative thereto would be admissible under the parol-evidence rule.

Section 557.3, Code of Iowa, is as follows:

"Conveyance passes grantor's interest. Every conveyance of real estate passes all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used."

Section 557.10, Code of Iowa, is as follows:

"Declarations of trust. Declarations or creations of trusts or powers in relation to real estate must be executed in the same manner as deeds of conveyance; but this provision does not apply to trusts resulting from the operation or construction of law."

These statutes date back to the Code of 1851. Cases decided since that time are in the light thereof.

■ II. If the testimony offered in behalf of plaintiff (i.e. the testimony of Donald M. Ross, Harold J. Ross, Mabel M. Ross, and Duncan K. Ross and the corroborating evidence as to what the parties did) is admissible the claim of the plaintiff is established by clear, satisfactory and convincing evidence. Donald M. Ross and Ruthanna W. Ross acquired only the naked legal title. The complete equitable title and right to control remained in Harold J. Ross.

The evidence was admissible.

"* * * the admission of the trust by the grantee or the full or partial performance thereof takes the transaction out of the statute, and permits proof by parol both of the fact of the admission and of the performance." Neilly v. Hennessey, 208 Iowa 1338, 1341, 220 N.W. 47, and cases cited therein.

■ Parol evidence may be introduced to establish an agreement for the creation of an interest in real estate where it is established by the oral evidence of the adverse party. Hardy v. Daum, 219 Iowa 982, 987, 259 N.W. 561. See also Butler v. Butler, 253 Iowa 1084, 1113, 114 N.W.2d 595.

Cooper v. Skeel, 14 Iowa 578, 580, decided 100 years ago says, "That a trust may be established by parol testimony against the answer of a respondent in chancery, as also against the face of a deed, is not denied."

In A. M. Byers & Company v. McEniry, 117 Iowa 499, 502, 91 N.W. 797, it is said that an express trust cannot be established by parol testimony. The rule there stated is not applicable to the case at bar. The situations are in no way comparable. In the cited case a creditor of the grantor tried to prove an express trust so as to participate in the proceeds of a conveyance to another creditor.

In the case at bar we have the grantor and grantee admitting the nature of the conveyance and proving a resulting trust.

■■ One who alleges a resulting trust has the burden of proving all necessary facts. Proof must be clear, convincing and satisfactory. There is no presumption of resulting trust in trans-

feror's favor when he transfers his own property to another without consideration. Shaw v. Addison, 239 Iowa 377, 384 and 389, 28 N.W.2d 816.

The evidence concerning the conveyance from Harold and wife to Donald and wife is clear and uncontradicted. We are not dealing with presumptions here because we have admissions.

There is no evidence in this case of any fraud, actual, incidental or growing out of the original transfer to Donald. We have a resulting but not a constructive trust. The essence of a constructive trust is absent here. See McBain v. Sorensen, 236 Iowa 996, 1004, 20 N.W.2d 449, quoting with approval Mead v. City National Bank of Clinton, 232 Iowa 1276, 1281, 8 N.W.2d 417, 420.

Neither the formalities nor restrictions incident to an express trust appears in the transfer to Donald and Ruthanna.

When we get to defendants' claim we have a different situation. George claims as the beneficiary of an express trust created by the writing of June 7, 1949.

In Sinclair v. Allender, 238 Iowa 212, 26 N.W.2d 320, Justice Bliss exhaustively reviews the authorities and says:

"Usually a trust relation involves three persons—the trustor, the trustee, and the cestui que trust or beneficiary. The trustor and the beneficiary may be the same persons. Trusts may arise by agreement or intention. Or, without either, the circumstances may be such that a trust will arise by implication or operation of law. Such trusts are commonly called implied or resulting trusts, and sometimes constructive trusts, although, properly speaking, a constructive trust is one arising from fraud, either actual or constructive, or the essence of the trust is wrongdoing of some kind." (Loc. cit. 220)

"There is no question about the well-established principle of equity, quaintly but succinctly expressed, in Claussen v. La Franz, 1 (Clarke) Iowa 226, 235, 'that the land is *his*, to whom the money belonged.'" (Loc. cit. 221)

While a resulting trust may be established by parol evidence, such evidence must be clear, satisfactory and convincing, or the courts will not disturb the legal title. Sinclair v. Allender,

loc. cit. 222, quoting from Sunderland v. Sunderland, 19 Iowa 325.

In Dunn v. Zwilling Brothers, 94 Iowa 233, 237, 62 N.W. 746, what is now Code section 557.10 was quoted and it is then said that trusts arising by implication of law are sometimes divided into two classes, first, those that are said to result by operation or presumption of law and which are called resulting or presumptive trusts, the second, those which exist by construction of law alone without any actual or supposed intention that a trust be created, but merely to assert the rights of the parties or prevent fraud. These are called constructive trusts. Among the conditions under which a resulting trust may arise is where a conveyance is made without any consideration and it appears from the circumstances that the grantee was not intended to take beneficially.

In Johnson v. Lavene, 196 Iowa 471, 192 N.W. 885, cited by appellant, the grantor attempted to repudiate, after his remarriage, the provisions of his own deed. He claimed that the deeds (his own and one through an intermediary) were a mistake and were intended to be testamentary in character. He sought as against the holders of the fee title (actually a remainder subject to his life estate) to have the fee title reconveyed to him. The situation was not comparable to the case at bar. Here we have admissions as to the nature and intent of the deeds and the property has actually been reconveyed pursuant thereto.

The nature of the estate held by Donald and Ruthanna is clearly established.

III. As noted, supra, there is no claim that there was any consideration for the execution of the so-called "Trust Agreement." There is ample evidence that George knew the limited nature of the title held by Donald and Ruthanna. There is no claim that George was a bona fide transferee or innocent purchaser for value. Donald and Ruthanna had no authority to make a gift. They had no authority to create any vested right in George. They could not, under the circumstances known to George, create in him greater rights than they owned or possessed.

In 90 C. J. S., Trusts, section 289, it is said: "In the case

of a resulting trust, the trustee has no power to sell the trust property. * * *." If a trustee cannot sell in derogation of the rights of the cestui que trust it follows that he cannot give the property away or by declaration recognize nonexistent rights.

In Zion Church v. Parker, 114 Iowa 1, 9, 86 N.W. 60, it was held that where a creditor who knew that the parties with whom he dealt were trustees, he was bound at his peril to know the extent of their powers. See also In re Trust of Spilka, 250 Iowa 1021, 1026, 97 N.W.2d 625.

Under circumstances such as we have here a trustee can convey no greater title than he possesses. 90 C. J. S., Trusts, section 306.

Defendant George bases his claim under an express trust created by the "Trust Agreement" of June 7, 1949. In order to support such a claim he must establish that Donald and Ruthanna owned such an equitable interest, as well as legal title, as would support the creation of a new trust. This the defendant cannot do under the evidence.

"Where the legal title to property is already held by one person for the benefit of another, the power to declare a further trust resides in the beneficial owner." 89 C. J. S., Trusts, section 23a.

Donald and Ruthanna could not create an interest in George because they did not own any equitable or beneficial interest against which a trust could be impressed.

IV. The trial court found that the so-called "Trust Agreement" of June 7, 1949, conveyed nothing because the grantors had nothing to convey; that the equitable title at all times remained in Harold J. Ross; that the equitable and legal title to the "Conway 40" is now in plaintiffs, Duncan K. Ross and Jimmy Lou Ross; that defendants, George H. Ross and Jean N. Ross, have no interest therein and that the mortgage held by Bohemian Savings & Loan Association is a lien on all the land. We agree.

The case is—Affirmed.

All JUSTICES concur except THOMPSON, J., who takes no part.