Keith KAUFMAN, Julienne Wigg, John Kaufman and Kevin Kaufman, Plaintiffs-Appellees,

v.

John ZIMMER, Jr., Defendant-Appellant,

August (Gus) Kaufman, Intervenor-Appellee,

Mary Kaufman Estate, Intervenor-Appellee,

Keith Kaufman et al., Defendants to Counterclaim and Cross Petition in Interpleader-Appellees.

No. 2–61769.

Court of Appeals of Iowa.

Nov. 19, 1979.

Application for Further Review Denied by Supreme Court on Jan. 4, 1980.

Richard Vipond of Reimer & Vipond, Denison, for defendant-appellant.

Bennett Cullison, Jr., of Cullison & Cullison, Harlan, for defendants to counterclaim and cross petition in interpleader-appellees.

Robert Kohorst of Louis, Moore & Kohorst, Harlan, for plaintiffs-appellees.

William Lewis of Hines, Sawin, Lewis, Salvo & Deren, P.C., Harlan, for intervenors-appellees.

Submitted to OXBERGER, C. J., and DONIELSON, SNELL, CARTER and JOHNSON, JJ.

CARTER, Judge.

■ Defendant, John Zimmer, Jr., appeals from trial court decree adjudging that he holds record title to a parcel of real estate in trust for the benefit of certain designated persons and ordering conveyance of same to those persons together with an award of damages.[1] Certain of the plaintiffs and intervenors cross-appeal urging that the trial court erred in determining the extent of their respective interests in the property. Because the action was docketed and tried in equity, our review is *de novo.* Iowa R.App.P. 4. With certain modifications hereafter discussed, we affirm the trial court's decree.

This dispute involves the respective property interests of the parties in a 120-acre farm formerly owned by Mary Kaufman, deceased. Plaintiffs are four of the six children of August (Gus) Kaufman; intervenors in the action include two other children of Gus Kaufman and the Estate of Mary Kaufman. Gus Kaufman and his children claim to be the beneficial owners of the property. The Estate of Mary Kaufman, who was Gus Kaufman's mother, claims to be an assignee of Gus Kaufman's interest in the subject property, whatever that may be.

On July 14, 1958, Mary Kaufman entered into a written agreement with defendant John Zimmer, Jr., providing for the sale of this 120-acre tract to Zimmer for the sum of $22,600, payable in installments as provided in the agreement. It is undisputed that Zimmer made all of the contract payments to Mary Kaufman and on March 5, 1969, received a warranty deed to the property executed by Mary Kaufman, a single person.

The evidence offered at trial to establish the claim of plaintiffs and intervenors to the subject property included plaintiffs' Exhibit 1, a written instrument which contained the following recitation and purported signatures:

I, John Zimmer Jr., hereby acknowledge that I am purchasing the 120 acres described as follows:

The East Half of the Northwest Quarter and the Northeast Quarter of the Southwest Quarter (E ½ NW ¼ & NE ¼ SW ¼) of Section 13, Township 80 N., Range 39 West of 5th P.M. Containing 120 Acres more or less.

from Mary Kaufman as trustee for her son and my brother-in-law, Gus Kaufman and his children. I further acknowledge that I will transfer the farm to Gus Kaufman or his children whenever they repay to me the sum of $22,600.00, less whatever I still owe to Mary Kaufman. I do not want to purchase the farm myself and agreed to do so to help Gus Kaufman out.

Signed at Harlan, Iowa this 29th day of February, 1960.

/s/ John Zimmer, Jr.

Witnesses:

/s/ Mrs. Mary Kaufman

John Zimmer, Jr., denied in his trial testimony that the signature on this exhibit was his. Mary Kaufman was deceased at the time of trial. While Zimmer admitted that he agreed orally with Mary Kaufman at the time of executing the July 14, 1958 agreement, that he would later "sell the farm back" to Gus Kaufman if the latter paid him for the farm, he insisted that his agreement in this regard required that he receive payment in two or three years following July 14, 1958, in order for Gus Kaufman to get title to the farm.

Gus Kaufman testified that he was present in an attorney's office when Zimmer agreed with his mother, Mary Kaufman, that Zimmer would take title to the farm and reconvey it to Gus and his children. This testimony was corroborated by

1. Such damages were awarded for a portion of the subject premises conveyed by Zimmer to a bona fide purchaser and for the rental value of the remaining property after demand was made of Zimmer for possession.

the testimony of Gus Kaufman's former wife who claimed to have been present at this meeting and by the testimony of William Lewis, the attorney involved. William Lewis testified that this oral agreement between Mary Kaufman and Zimmer took place prior to the execution of the July 14, 1958 agreement. He further testified that he drafted plaintiffs' Exhibit 1 to reflect the oral agreement between Mary Kaufman and John Zimmer, Jr., because he was anxious that some record be made of said agreement. He stated that he gave the instrument to Mary Kaufman and she indicated that she would take it to Zimmer for his signature. Attorney Lewis had no personal knowledge of whether the signature found on plaintiffs' Exhibit 1 was in fact that of John Zimmer, Jr. Gus Kaufman, however, testified without objection that his mother had received a signed verification from Zimmer of the oral understanding between the parties. In addition, an expert witness testified that in his opinion the signature on plaintiffs' Exhibit 1 and the signature contained on an exemplar of Zimmer's handwriting were made by the same person.

I. The first issue presented for our determination is whether the trial court was correct in finding that John Zimmer, Jr. executed plaintiffs' Exhibit 1. Zimmer contends that the evidence does not support the trial court's finding in this regard. We disagree. Upon our *de novo* review of the entire record, including the evidence detailed above, we conclude that the great weight of the evidence sustains the trial court's finding that Zimmer's signature on the document is genuine.

We further find that plaintiffs' Exhibit 1 evidences the true agreement under which Mary Kaufman agreed to convey the real estate which is the subject of this dispute to Zimmer. The evidence strongly suggests that the oral conditions agreed to by Zimmer fixed the extent of the title which Zimmer acquired under the July 14, 1958 agreement. The warranty deed executed thereafter was only an incident of that contract and, as such, was subject to the prior limitation which the parties placed on Zimmer's title. The written admission of Zimmer, as the intended grantee in the contract for conveyance from Mary Kaufman, is competent evidence to establish the limitations which exist upon his own title and to reveal the true state of the beneficial interests in the property conveyed. *Ross v. Ross*, 256 Iowa 326, 333, 126 N.W.2d 369, 374 (1964).[2]

II. Defendant Zimmer next asserts that the transaction under which plaintiffs and intervenors claim is: (a) violative of the rule against perpetuities expressed in section 558.68, The Code; or (b) an unreasonable restraint on alienation. As the premise for such contention, Zimmer asserts the only agreement which can be sustained by the evidence is a contract vesting beneficial as well as record ownership in himself, subject only to an option in Gus Kaufman and his children to purchase the property. Because there is no requirement that this option be exercised within any particular period of time, Zimmer asserts that either or both of the aforesaid prohibitions serve to void the purported interest of Gus Kaufman and his children.

The validity of the foregoing contention depends in great measure upon the characterization placed upon the transaction between Mary Kaufman and Zimmer. If, as the trial court found, the conveyance to Zimmer was in trust for the use of Gus Kaufman and his children, the beneficial title was, at all times material, vested in the latter persons or class of persons. If this were the case, there could be no violation of the rule against perpetuities. *Butler v. Butler*, 253 Iowa 1084, 1128–29, 114 N.W.2d 595, 620–21 (1962).

Nor would this state of the title amount to an unreasonable restraint on alienation. All of Zimmer's arguments in this respect are couched in terms of Zimmer's power to convey. As we have deter-

2. As stated in *Ross*, to call such an instrument an agreement is a misnomer. It is an admission of limitation on the title. 256 Iowa at 329, 126 N.W.2d at 371.

mined in Division I, Gus Kaufman and his children have been the owners of the beneficial interest in the property during the entire time that Zimmer has held record title thereto. The rule against unreasonable restraints on alienation of property more properly relates to those estates to which alienability is a necessary attribute. *See, McCleary v. Ellis,* 54 Iowa 311, 6 N.W. 571 (1880); *Gordon v. Tate,* 314 Mo. 508, 284 S.W. 497 (1926); Annot. 80 A.L.R. 1007, 1026 (1932). Such is not the case with respect to the title of a trustee. No reason has been shown why the owners of the beneficial interest in the subject property could not convey such interest subject to Zimmer's claim which is in the nature of a lien for repayment.[3]

The result reached by the trial court is no less valid because Zimmer furnished the consideration for the acquisition of the property from Mary Kaufman. Although the transaction involved in the present case is certainly not typical, it is in certain ways quite similar to an equitable mortgage growing out of an absolute deed. In such situations, it has been held that a deed absolute on its face may be shown to have been given for security only. *Kleinsorge v. Clark,* 232 Iowa 313, 316, 4 N.W.2d 433, 434 (1942); *Rance v. Gaddis,* 226 Iowa 531, 543, 284 N.W. 468, 474 (1939). In some of these situations, as in the present case, the transactions were tripartite with the grantee in the deed furnishing the consideration to acquire the property from the grantor for the benefit of a third party. *Johnson v. Board of Supervisors,* 237 Iowa 1103, 24 N.W.2d 449 (1946); *Perry v. Adams,* 179 Iowa 1215, 162 N.W. 817 (1917). In such cases, the third party has been declared to be the true owner with the titleholder having only a lien or charge thereon.

■ Similar considerations lead us to reject Zimmer's contention that the absence of affirmative duties placed on him negates the existence of a trust. This argument would be more persuasive were it not for our finding that Zimmer has, in plaintiffs' Exhibit 1, acknowledged his status as trustee. He is thus charged with the ultimate fiduciary duty of preserving the property for the benefit of Gus Kaufman and his children. This is sufficient to support a finding that a trust was created.

Nor is the fact that Zimmer has personally enjoyed the benefits and use of the farm during the intervening years necessarily inconsistent with our determination of Zimmer's status. The record titleholder in *Butler v. Butler,* similarly treated trust assets as his own property until the court declared the existence of a trust for the benefit of the brother of the record titleholder. In the present case, the benefits which Zimmer has realized from the trust property may be viewed as compensation for the financial responsibilities he assumed. This fact doubtless explains why payment of interest is not required in the repayment of the purchase price to Zimmer.

■ III. The plaintiffs, by cross-appeal, contend that the trial court erred in finding that the children of Gus Kaufman, born after the agreement between Mary Kaufman and John Zimmer, Jr., have a beneficial interest in the disputed real estate. Plaintiffs contend the reference made in plaintiffs' Exhibit 1 to "Gus Kaufman and his children"[4] refers only to those children in being at the time.[5] The trial court found that the class also included children born after the effective date of the transaction between Mary Kaufman and Zimmer.

Aside from a federal case purporting to apply Iowa law, which is hereafter dis-

---

**3.** Encumbrances are not restraints on alienation, nor are leases. *See Woodard v. Woodard,* 184 Iowa 1178, 1183, 169 N.W. 464, 465 (1918).

**4.** The significant word in plaintiffs' Exhibit 1 which describe the interest of the parties are "Gus Kaufman and his children." A later reference in the instrument to "Gus Kaufman or his children" identifies the obligation of some-

one in the class to repay Zimmer for the cost of acquiring the property.

**5.** The two children in question, intervenors Tamara Kaufman and Tara Kaufman, were born on December 3, 1962 and April 17, 1965, respectively. It is apparently plaintiffs' argument, that all interests in the property became fixed at or prior to July 14, 1958.

cussed, we find no Iowa cases which aid in determining the identity of the class. Cases from other jurisdictions involving the transfer of an interest in real property to one and his children have arrived at conflicting results as to the interest thus conveyed. Basically, these cases fall into three categories: (1) those which support a rule of property that the parent and those children in being at the time of the conveyance take as tenants in common with afterborn children taking nothing (see cases collected in Annot. 161 A.L.R. 612, 629–35); (2) those which support a rule of property that a parent takes a life estate and that all children born prior to the death of the parent share the remainder in common (see cases collected at Annot. 161 A.L.R. 612, 649–64); and (3) those cases which base the result on the intent of the grantor to be arrived at from an examination of all the surrounding facts (see cases collected at Annot. 161 A.L.R. 612, 669–70).

In *Hubbird v. Goin*, 137 F. 822 (8th Cir. 1905), the court purported to apply Iowa property law in determining the effect of a conveyance to "Elmira Hubbird & children." While recognizing the existence of the first category of cases referred to, above, the court determined that under Iowa law the court was free to discover the intention of the grantor. From the circumstances of the parties, the court held that "it was the mind and purpose of [the grantor] to vest in his daughter a life estate and to secure the remainder in her children." *Id.* at 835. In *Hubbird*, as in the present case, there was a dispute as to the rights of children born after the date of the transaction and the court held that afterborn children shared in the remainder interest.

In the present case we are not dealing with the language of a formal instrument of conveyance, but rather an acknowledgement of the legal titleholder that he held title for certain designated beneficiaries. Under such circumstances, less precision of

language is to be expected than in the wording of a deed. We therefore feel free to seek the most likely intention of Mary Kaufman in her transaction with Zimmer.

There was testimony at trial from Gus Kaufman's brother that he was familiar with Mary Kaufman's purpose and that it was to preserve the farm for Gus's children. This accords with other evidence presented and we credit such testimony in determining the interests of the respective parties. As stated by the federal court in *Hubbird*:

In the very nature of a kindly heart, the after-born children would be as much the objects of his [grantor's] affection and the concern of his solitude and providence as those in being. This strong, natural impulse should accentuate the fact that if the grandfather had intended to limit the deed to the living children he would have employed some term, some word, to indicate it. 137 F. at 835.

Based upon the entire record, we arrive at a result similar to that of the federal court in *Hubbird*. We conclude that the transaction between Mary Kaufman and John Zimmer, Jr., created a beneficial interest of life tenant in Gus Kaufman, with a remainder interest held in common among all six of his children. The trial court's decree should be modified to so provide.[6]

IV. We next consider the claim of the intervenor, Estate of Mary Kaufman, that it is the successor in interest to Gus Kaufman's interest to the property. This claim is based upon an instrument in writing purporting to make such assignment for a valuable consideration.

The evidence presented in support of this claim by the intervenor clearly sustains this agreement as valid and enforceable between the parties thereto. The trial court erred in permitting Gus Kaufman to subsequently renounce his interest in the subject property to the prejudice of the intervenor

---

6. In reaching this result, we recognize that none of the parties have urged that Gus Kaufman's interest in the property is a life estate. Plaintiffs claim that he has no interest in the property and certain other parties claim that

his interest is as much as an undivided one-fifth. Because of such lack of agreement, we feel free, on our *de novo* review, to adopt a determination of his interest not urged by any party.

estate. Upon remand, the decree should be modified to reflect the appropriate interest of the Estate of Mary Kaufman (now found to be a life estate measured by the life of Gus Kaufman).

V. Certain of the parties to the transactions seek to take advantage of a so-called tender made by the plaintiffs. Under our characterization of the transaction, any payment to Zimmer is not a contract tender to obtain title but rather payment of a lien or charge in favor of Zimmer. As such, there is no requirement that any of the parties tender payment to Zimmer in order to be vested of that interest which we find they hold. The trial court should, however, on remand, enforce equitable contribution among all holders of the beneficial interest (including the Estate of Mary Kaufman) to the extent that payment is or has been made by certain of the beneficial owners in discharge of Zimmer's lien. Such determination may require receiving additional evidence for purposes of determining the proportionate value of the life estate and remainder interests. Such proportionate values should also serve as the basis for a reapportionment by the trial court of the monetary award against Zimmer for sale of a portion of the trust property. Such reapportionment should be among all persons found to be beneficial owners in accordance with their respective interests. That portion of the monetary award against Zimmer for the rental value of the property is cancelled. Those plaintiffs who made demand for possession were not, as remaindermen, entitled thereto. The owner of the life estate did not demand possession prior to final judgment in this action.

VI. We have carefully considered plaintiffs' claims that they should be reimbursed by Zimmer for the attorney fees they have incurred in this litigation. We conclude that the authorities upon which they rely are inapposite to the present controversy. No ground for the recovery of attorney fees has been made to appear.

The decision of the trial court is affirmed as herein modified, and the cause remanded for the entry of a new decree consistent with our decision.