# IN THE COURT OF APPEALS OF IOWA

No. 23-0267
Filed October 11, 2023


**SUSAN J. WALLIN,**
    Plaintiff-Appellant,

**vs.**

**KIMBERLY HURTIG, SHERRI LARKIN, KATHY EDWARDS, JEFF HURTIG, INC., and the ESTATE OF JANE BJORK,**
    Defendants-Appellees.
_____


        Appeal from the Iowa District Court for O'Brien County, Shayne Mayer,

Judge.


        Susan Wallin appeals the district court's ruling in this declaratory judgment

action. **AFFIRMED.**


        Brett A. Lovrien of Cadwell Sanford Deibert & Garry LLP, Sioux Falls, for

appellant.

        Joel D. Vos, Thomas J. Whorley, and Avery N. Van Holland, Sheldon, for

appellees.


        Considered by Bower, C.J., and Ahlers and Chicchelly, JJ.

**BOWER, Chief Judge.**

Susan Wallin appeals the district court's ruling in this declaratory judgment action claiming the court erred in holding Wallin could not unilaterally terminate any portion of a farm lease. Finding no legal error in the district court's ruling, we affirm.

**I. Background Facts.**

These facts are not in dispute. Wallin and her three sisters, Kim Hurtig, Sherri Larkin, and Kathy Edwards, are the four living children of decedent Jane Bjork (collectively "Siblings"). Prior to her death, Bjork owned a sixty-percent interest in the following legally described real property:

> Tract 1—South Half of the Northwest Quarter (S 1/2 NW 1/4), the South Half of the Northeast Quarter (S 1/2 NE 1/4) except Parcel A, and the North Half of the Southwest Quarter (N 1/2 SW 1/4) all in Section 8, Township 94 North, Range 41 West of the 5th P.M., O'Brien County, Iowa.
> Tract 2—West Half of the Southwest Quarter (W 1/2 SW 1/4) Section 35, Township 96 North, Range 42 West of the 5th P.M., O'Brien County, Iowa.

("Real Estate".) Bjork also retained a life estate interest in the remaining forty percent of the Real Estate, with the remainder to the Siblings.

On January 23, 2015, Bjork entered into a fifteen-year cash rent farm lease ("Farm Lease") with Jeff Hurtig, Inc. for the entirety of the Real Estate (approximately 316.59 acres, with 272.8 being tillable acres). Jeff Hurtig is Kim Hurtig's spouse and the president of Jeff Hurtig, Inc.

Bjork passed away on January 7, 2021, and her estate is in the process of probate administration. When Bjork died, the Siblings became owners as tenants in common of an undivided forty-percent interest in the Real Estate. The Siblings

are also the sole beneficiaries of Bjork's estate; under Bjork's Last Will and Testament, the Siblings will inherit the remaining sixty-percent interest of the Real Estate as tenants in common.

Prior to September 1, 2021, Wallin sent a notice of termination of the farm lease to Jeff Hurtig, Inc. Bjork's estate; co-executors Kim Hurtig, Sherri Larkin, and Kathy Edwards; and Jeff Hurtig, Inc. (collectively "Hurtig") dispute the validity of the notice of termination. Kathy Edwards has since sold her interest in the Real Estate to Kim Hurtig.

Wallin filed this action for declaratory judgment seeking an "order and judgment declaring the Farm Lease unenforceable, invalid, or terminated with respect to 100% of the Real Estate as of March 1, 2022." Wallin states the question presented is "the enforceability of the Farm Lease prospectively following Wallin's termination notice."

Wallin argued,

> The Siblings are owners as tenants in common in an undivided [forty percent] interest in the Real Estate as of the date of Bjork's death. Under the terms of Bjork's Last Will and Testament, her estate, including the undivided [sixty percent] interest in the Real Estate, will be distributed to the Siblings, the four beneficiaries of her Will. Thus, it is Wallin's position that this termination notice terminated the Farm Lease with respect to 100% of the Real Estate.

Hurtig disagreed, emphasizing three of the four sisters did not seek termination of the lease, Wallin had no right to act as an agent of the other three, and tools of statutory interpretation contraindicate Wallin's interpretation. Further, Hurtig argued Wallin had other options besides attempting to terminate the lease, including seeking the fair rental value from the tenant via Iowa Code section 562.10

(2021) or seeking partition.[1] Alternatively, Hurtig argued the court should have found the notice of termination terminated only Wallin's remainder interest in the forty percent of the Real Estate.

The parties filed opposing motions for summary judgment. The district court denied Wallin's motion and granted Hurtig's motion except with respect to Hurtig's request for a finding "that the lease to Defendant Jeff Hurtig, Inc. is valid and enforceable as to the undivided 90% of the real property."[2]

The district court concluded that where a valid lease exists and fewer than all tenants in common want to terminate the lease, Iowa precedent holds the individual co-tenant cannot do so. *See Batcheller v. Iowa State Highway Comm'n*, 101 N.W.2d 30, 34 (Iowa 1960) ("One co-tenant without authority cannot bind the other.". There is no suggestion lessor in any way authorized or ratified the serving of the notice by defendant. The notice served did not terminate the tenancy." (internal citations omitted)); *cf. Henderson v. Henderson*, 114 N.W. 178, 179–80 (Iowa 1907) (finding that while a lease of all or a part of property held in common does not prevent a partition, a partition of leased premises is subject to the rights of the lessee).

Wallin argued that if this lease is allowed to continue, then it would be a restraint on alienation, which is void under *In re Estate of Cawiezell v. Coronelli*, 958 N.W.2d 842 (Iowa 2021). Leases are not restraints on alienation. *Kaufman*

---

[1] Wallin has filed an action for partition, but it had not advanced past the preliminary stage at the time of the court's ruling.

[2] Hurtig arrives at ten percent by calculating Wallin's one-fourth interest in the undivided forty percent interest as a tenant in common. The trial court noted no authority for this proposition was provided, and it could find none to support such ruling.

*v. Zimmer*, 287 N.W.2d 884, 888 n.3 (Iowa Ct. App. 1979) ("Encumbrances are not restraints on alienation, nor are leases." (citing *Woodard v. Woodard*, 169 N.W. 464, 465 (Iowa 1918)); *Woodward*, 169 N.W. at 465 ("True, under this will, it might be more years after the death of testatrix than are specified in the statute before her great-grandchildren would come into possession, use, and enjoyment. That would manifestly be so if the ancestor had leased the property for 999 years. Yet such a lease is no restraint upon alienation . . . ."). The district court pointed out, "*Coronelli* demonstrates this point rather helpfully."

> In *Coronelli*, as here, there was a lease with favorable terms to a family member, and the decedent placed in their will a precatory request for such lease to continue. . . .
> . . . .
> In other words the *Coronelli* Court held specifically "the testamentary provision restricting the beneficiaries from selling or transferring the devised property outside their immediate family for a period of twenty years following the testator's death is a prohibited restraint on alienation and is void," despite there being a lease very similar to the one at issue in this case that Plaintiff claims is a restraint on alienation. One would think that, were such a lease a restraint on alienation, the Court would at least mention it, perhaps in a footnote or a parenthetical. Instead, only the restriction on actually selling the property was singled out. Further, nothing stops Plaintiff from selling her interest in the land (i.e. alienating it). One of her siblings has already done so, and there is no claim (and no basis for a claim) that that sale was illegal. Thus, the Court finds that the lease in this case is not a restraint on alienation.

Having determined that, as a co-tenant in common, Wallin cannot terminate the lease unilaterally, the district court turned to consider Wallin's ability to terminate the lease as a co-executor of the will as to the sixty-percent interest still in probate.[3]

---

[3] Article V of the decedent's will nominates and appoints Kimberly N. Hurtig, Sherri Larkin, and Susan J. Wallin as co-executors of her last will and testament without any mention of whether they need to concur to exercise power.

Hurtig argued Iowa Code section 633.76 prohibits Wallin from terminating the lease without the consent of all the co-executors. Iowa Code section 633.76 provides,

> Where there are two or more fiduciaries, they shall all concur in the exercise of the powers conferred upon them, unless the instrument creating the estate provides to the contrary. In the event that the fiduciaries cannot concur upon the exercise of any power, any one of the fiduciaries may apply to the court for directions, and the court shall make such orders as it may deem to be to the best interests of the estate.

As noted by the district court,

> Executors are fiduciaries under Iowa Code section 633.3(19). It is clear from Iowa Code section 633.76 that a single executor cannot exercise power unless the rest concur or the will states otherwise. The will does not state otherwise. Therefore, If executors disagree upon an exercise of their power as executors, as they do in this case, any executor can ask the court, sitting in probate, for directions. This instant action is not the probate and no executor has asked the court for directions. Here, the sole issue is whether [Wallin's] notice purporting to terminate the lease did, in fact, terminate the lease. As the other executors did not concur, [Wallin]'s notice did not terminate the lease as to the [sixty percent] of the land held in probate.

## II. Discussion.

On appeal, Wallin argues the district court erred as a matter of law when it held: (1) she could not terminate any portion of the farm lease as the holder of the successor interest pursuant to Iowa Code section 562.8;[4] and (2) she could not

---

[4] Section 562.8 provides:

> Upon the termination of a life estate, a farm tenancy granted by the life tenant shall continue until the following March 1 except that if the life estate terminates between September 1 and the following March 1 inclusively, then the farm tenancy shall continue for that year as provided by section 562.6 and *continue until the holder of the successor interest serves notice of termination* of the interest in the manner provided by section 562.7. However, if the lease is binding upon the holder of the successor interest by the

terminate the lease with respect to the sixty-percent undivided interest without the unanimous consent of the other tenants in common.

Our review of summary judgments is for correction of legal error. *In re Franken*, 944 N.W.2d 853, 857 (Iowa 2020). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). Here, the district court concluded Wallin had no ability to terminate the lease unilaterally.

Wallin first asserts the district court erred in concluding she does not qualify as "the holder of the successor interest" under Iowa Code section 562.8 and was thus barred from terminating any portion of the farm lease. Wallin maintains that as a successor in interest to the life tenant she was entitled to serve notice of termination of tenancy unilaterally. Wallin asserts the issue is "what portion of the Property is subject to the termination of the Farm Lease provided by Wallin." She notes, "In a tenancy in common, each tenant has a separate, distinct and undivided interest in all of the property so held." So,

> at the moment of Bjork's passing, Wallin had an equal right to possess and use the entirety of the [forty percent] interest of the Property. As a result, by operation of law and as a matter of common sense, Wallin's undivided ownership interest in [forty percent] of the Property renders her as "the successor interest" along with the other tenants in common.

provision of a trust or by specific commitment of the holder of the successor interest, the lease shall terminate as provided by that provision or commitment. This section does not abrogate the common law doctrine of emblements.

(Emphasis added.)

The district court concluded the phrase "the holder of the successor interests" here means all holders of the successor interests.[5] We agree. As noted by Hurtig: "In this case, the article used by the legislature matters."[6] If the legislature meant "a" holder of the successor interest, it could have said so. But the legislature chose the article 'the,' which particularizes the subject it precedes— "holder of the successor interest." *See Doe*, 943 N.W.2d at 611. Wallin does not alone hold the successor interest; the successor interest is held by the tenants in common.

While it is true "[t]he interest of a tenant in common may be transferred, devised[,] or encumbered without the consent of the remaining cotenants," *In re Est. of Rogers*, 473 N.W.2d 36, 40 (Iowa 1991), "a cotenant is not entitled to the exclusive possession of any particular part of the land, as each is entitled to occupy the whole in common with the others or to receive a share of the rents and profits." 86 C.J.S. *Tenancy in Common* § 3 (Aug. 2023 update). "The quality of the cotenants' estates may be different, the shares may be unequal, and the modes

---

[5] Hurtig maintains support for this interpretation is found in Iowa Code section 4.1(17), which provides: "Unless otherwise specifically provided by law the singular includes the plural, and the plural includes the singular."

[6] *See Doe v. State*, 943 N.W.2d 608, 611 (Iowa 2020) ("The statute's use of the definite article 'the' particularizes 'the criminal case' and 'the case.'" (citing *Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) (stating "grammar and usage establish that 'the' is 'a function word . . . indicat[ing] that a following noun or noun equivalent is definite or has been previously specified by context.'" (alteration in original) (quoting Merriam-Webster's Collegiate Dictionary 1294 (11th ed. 2005)))); *Am. Bus. Ass'n v. Slater*, 231 F.3d 1, 4–5 (D.C. Cir. 2000) ("[I]t is a rule of law well established that the definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'" (quoting *Brooks v. Zabka*, 450 P.2d 653, 655 (Colo. 1969) (en banc))); *State v. Hohenwald*, 815 N.W.2d 823, 830 (Minn. 2012) ("The definite article 'the' is a word of limitation that indicates a reference to a specific object.").

of acquisition may be unlike; the only unity is that of possession." *Rogers*, 473 N.W.2d at 40. Wallin's interpretation of her ability to terminate the lease as "the holder of the successor interest" would grant her authority her tenants in common have not approved.

As to Wallin's remainder interest in the undivided sixty percent Bjork owned in fee simple, Bjork had the right during her lifetime to enter into the farm lease, and the co-tenants take their interests under the will pursuant to the farm lease. *See Giltner v. Est. of Giltner*, No. 07-2117, 2008 WL 5412075, at *2–3 (Iowa Ct. App. Dec. 31, 2008). Because Bjork, at the time of her death, was the fee simple owner of sixty percent of the farm subject to a written lease, the lease terms and landlord-tenant statutes apply. Iowa Code section 562.6 provides in part, "a farm tenancy shall continue beyond the agreed term for the following crop year and otherwise upon the same terms and conditions as the original lease unless written notice for termination is served upon either party." *See* Iowa Code § 633.350 ("Except as otherwise provided in this probate code, when a person dies, the title to the person's property, real and personal, passes to the person to whom it is devised by the person's last will . . . but all of the property shall be subject to the possession of the personal representative as provided in section 633.351[7] and to

---

[7] Section 633.351 provides in turn:

> During the period of administration, the personal representative shall take possession of the decedent's real estate, except the homestead and other property exempt to the surviving spouse. . . . The personal representative may maintain an action for the possession of such real and personal property or to determine the title to any property of the decedent. Until property is distributed, the personal representative shall take reasonable steps to safeguard such property, pay any expenses related to such property, and collect any income generated by such property. Unless otherwise

the control of the court for the purposes of administration, sale, or other disposition under the provisions of law, and such property . . . .").  The district court properly determined under Iowa Code section 633.76 Wallin, as one of three executors of the will, could not terminate the lease unilaterally.  Because the co-executors did not concur, they may seek direction from the probate court.  But this proceeding was not in probate, and the district court did not err in finding Wallin could not act unilaterally to terminate the lease as to the property of the estate.  Finding no error, we affirm.

**AFFIRMED.**

---

provided by the decedent's will, all such expenses shall be paid from the residuary estate and all such income shall be considered a part of the residuary estate.